## Talbott, Executrix, et al. v. Giltner.

(Decided March 1, 1918.)

### Appeal from Bourbon Circuit Court.

1. Wills—Undue Influence—Submission to Jury.—Where there is a total absence of evidence tending to support a plea, or claim of undue influence exercised over the testatrix, it is error for the trial court to submit the question of undue influence to the jury.

2. Wills—Undue Influence.—Influence obtained by acts of kindness, affection, love, or appeals to the reason, can not properly be termed undue, and a testamentary paper containing devises influenced by such means are not to be condemned unless the dominion was such as to destroy the free agency of the testatrix.

3. Wills—Undue Influence.—Undue influence can not be presumed, but evidence must be adduced tending to sustain the want of free agency on the part of the testatrix.

DENNIS DUNDON and HUNT & BUSH for appellants.

TALBOTT & WHITNEY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The will of Mrs. Anna Isabelle Giltner, who died a resident of Bourbon county on the 26th day of August, 1914, is the subject of this litigation. Mrs. Giltner left two children surviving her, both married: a daughter, Mrs. Grace Giltner Talbott, a son, William Giltner. By the will the daughter, Mrs. Talbott, is devised a horse, a carriage and the household effects of the testatrix. The landed estate is placed in trust for the use and benefit of the two children during their lives with remainder over to their children, if any; and if not, then to the Massie Memorial Hospital, Paris, Kentucky. The daughter, Mrs. Grace G. Talbott is named executrix of the will and trustee of the estate. Mrs. Giltner

was the owner of certain stocks and bonds and other personal property not devised by the will but which she before her death disposed of by gift to her children and grandchildren. Mrs. Talbott was the mother of two children, but the son William Giltner had no issue. For some years before her death Mrs. Giltner resided in the home of her daughter, Mrs. Talbott, and was much attached to her grandchildren who lived in the same home. To these grandchildren she gave certain bonds, reserving to herself the right to take the dividends thereon so long as she lived. About the same time she gave to her son and daughter certain other valuable stocks and bonds making a like reservation as to these also. As to certain other personal estate she died intestate. The entire estate is estimated at from thirty-five to fifty thousand dollars in value.

The will was probated in the Bourbon county court without objection. Some months thereafter the son, William Giltner, instituted this contest, alleging that his mother did not possess testamentary capacity at the time of the making of the will, and that she was unduly influenced in her devises by the daughter, Mrs. Talbott, and her husband.

Upon the first trial in the circuit court the jury hung, and the case was continued to a subsequent term; on the second trial the jury returned a verdict finding the paper not to be the will of Mrs. Giltner. Judgment was entered upon the verdict and the motion and grounds for new trial being overruled, the daughter, Mrs. Talbott, as trustee and executrix prosecutes this appeal.

Appellant, Mrs. Talbott insists that the court (1) erroneously instructed the jury and especially in submitting an instruction upon undue influence, there being, as she says, no evidence whatever of undue influence; (2) she asserts that the verdict is contrary to the evidence and is not supported by sufficient evidence.

From the evidence we learn that Mrs. Giltner was a Miss Collins, and before her marriage resided in the city of Louisville, and was engaged as a teacher in the public schools of that city. According to the evidence she was a young lady of good education. Upon her marriage to Mr. Giltner she went to Bourbon county to reside upon a small farm. To their marriage was born three children, two sons and a daughter; one son dying some years before his mother, but after he had grown

to manhood and had been married, but he left no issue. After the death of Mr. Giltner in 1881 the testatrix continued to reside upon the farm and was obliged to make a living for herself and family. · This she did very successfully as is shown by the evidence. She did more, for in the years that succeeded she built up quite an estate, at the same time giving her children a fair education. She was a woman of strong character and fixed purposes, and withal careful, frugal and industrious. She managed the farm and made it earn not only a living for her but an excess which she prudently invested. The son, William Giltner, left the farm about the time he arrived at the age of sixteen years, and undertook to make a living for himself. Occasionally he returned to his mother's home, but did not remain long at a time. It is his contention that he could not get along with his mother, the testatrix. His first venture on leaving home was to engage in operating a threshing machine; then he obtained a position with an implement company and finally launched a garage business, which failed. He was unable to accumulate anything and in fact became considerably involved in debt. The daughter married Mr. Curtis Talbott, a hardware merchant, in Paris.

This is the third will executed by the testatrix before her death. The first one was prepared at her suggestion by her lawyer, Judge Mann; the second she prepared herself; becoming dissatisfied with the second will she sought out her lawyer, Judge Mann, and the will in contest was prepared. It was written by Judge Mann at the suggestion of the testatrix, and in accordance with her direction. So far as the evidence shows no one was present during the preparation of the will except the testatrix and her lawyer. After it was prepared she carried it over to her banker, Mr. S. E. Bedford of the People's bank, Paris, Kentucky, where she signed it in the presence of S. E. Bedford and W. T. Bryan, who in her presence and at her instance witnessed the will and attested it with their signatures. She left the will and certain other papers with the banker with instructions to deliver to her daughter, Mrs. Talbott, upon testatrix's death. The other papers were to be delivered part to her daughter, part to her son, and the others to her grandchildren after the death of testatrix. So far as disclosed by this evidence no one suggested to testatrix how her property should be

devised nor in any manner influenced her in any provision of her will. Certainly Mrs. Talbott and her husband were not present either at the time of the preparation of the instrument nor at its execution, and so far as is disclosed by the evidence neither saw nor read the instrument until after the death of testatrix. The instrument is dated April 13th, 1914, and Mrs. Giltner departed this life in August, 1914.

Complaint is made that testatrix disliked her two daughters-in-law and had asserted that neither of them should enjoy any part of her estate either while she was living or afterwards. The evidence substantially supports this assertion. And it further shows that Mrs. Giltner and her daughters-in-law disagreed about different small matters and that the younger women were not as respectful to or as considerate of their mother-in-law as the difference in their ages and their relative positions required of them. Undoubtedly Mrs. Giltner was a very determined and uncompromising person who had confidence in herself and demanded obedience from her children. This no doubt was largely the cause of the disagreement between her and the daughters-in-law. However this may be, it is thoroughly impressed upon the mind that Mrs. Giltner was not easily controlled or persuaded, and the exercise of influence over her in making her will is quite improbable.

The other ground of contest is rested upon the mental deficiency of the testatrix and her inability to take a rational survey of her property, recognize the natural objects of her bounty, her duty to them and to understand and appreciate the distribution made by her of her estate under the written instrument. It is asserted that the father of Mrs. Giltner at one time was a lunatic and that certain other members of the family suffered mental derangement. In Mrs. Giltner's case it was urged that she suffered from arterial sclerosis and that this disease affected her mental grasp; that she had a cracking noise in her head, or neck, from which she had suffered for many years. A sister testifying for the contestant tells of a sunstroke which Mrs. Giltner suffered in her early life and from which the sister is of opinion her mental troubles arose. It must be borne in mind that all these troubles, if troubles they were, afflicted Mrs. Giltner even before her marriage and certainly during the time when she was not only

making a living for herself and family but was accumulating a nice estate, through her energy and business acumen. It can scarcely be asserted that a woman who can conduct her business affairs upon a farm of the size owned by Mrs. Giltner so as to make a comfortable living for herself and three children and at the same time accumulate stocks and bonds and other valuable property, has not the mental grasp necessary to take a rational survey of her estate, know the extent of her property and the natural objects of her bounty, and this is fairly conceded by the contestants, but they seriously contend that she did not appreciate her duty to the objects of her bounty, know them even though she did. She gave all her estate to her two children and her grandchildren in equal part. The chief objection to the will is that she entailed the estate instead of turning over the corpus thereof to her son and daughter. Mrs. Giltner, like most mothers, was thoroughly acquainted with the nature and qualities of her children. The daughter, Mrs. Talbott, had displayed more business sagacity and frugality than the son, and this undoubtedly induced the executrix, a prudent, careful old lady, to make the daughter the executrix of the will and trustee of the estate instead of the son, who by his entire life had displayed a want of skill in business as well as a restless, wasteful improvident nature.

With all these facts before her the testatrix, fearing that her son who had been a failure in business and who owed debts amounting to several thousand dollars, might allow the estate which she had accumulated through a life of unceasing efforts to slip through his fingers and he come to want, provided in her will that he should have one-half of the net income arising from her estate, and that his children, if any should be born to him, take one-half of the estate in fee at his death, and that the other one-half should go to the daughter and her children in like manner. The provisions of the will were only an attempt to preserve the estate against the improvidence of the son who had proven himself a business failure, and so far from indicating a want of testamentary capacity presages a mind thoroughly able to take account of all the facts and to guard against a disaster which the life of a luckless son proved imminent.

While it must be admitted that the devises of the will in contest here, as in all cases, were more or less influenced or affected by the affection and love testatrix bore for the devisees; yet, this influence can not properly be termed undue for it is but the natural human result. By undue influence is meant an influence which obtains dominion over the mind of the testator to an extent that destroys free agency on his part in the disposal of his estate and constrains him in respect thereto, to do that which he would not have done if left to the free exercise of his own judgment, and it is not material when this undue influence was exerted if it was present and operating on the mind at the time the paper read in evidence was executed. (Wood v. Riggs, 152 Ky. 242.)

This court has repeatedly held that any influence obtained by acts of kindness, love, or appeals to the feelings or understanding which does not destroy free agency, is within the law, and a paper otherwise regular will not fail because executed by one so influenced. It is but natural that a testator should remember those for whom he entertains a feeling of love and affection. and those too who have been kind and considerate of him. Kindness, attention and helpfulness often move a devisor to mention the doer in his testamentary paper, and such devise, if otherwise regular, must not be condemned.

Undue influence can not be presumed. Proof tending to establish its existence must be adduced. Nor will the fact that the devisee or another had access to the testator, or there was opportunity to influence him, be sufficient to sustain the plea unsupported by evidence of facts which tend to establish the want of free agency on the part of testatrix.

The great weight of the evidence supports the contention of the propounders that Mrs. Giltner was a person possessing testamentary capacity at the time of the execution of the paper on the 13th day of April, 1914. It further shows that she was a person of strong will and fixed purpose, not easily dissuaded from her intentions.

There being an utter failure of proof of undue influence it was error for the court to submit that question to the jury. For this reason the judgment is reversed for proceedings consistent with this opinion.