## Combs et al. v. Combs et al.
### (Decided Jan. 18, 1938.)

544

C. A. NOBLE and B. P. WOOTTON for appellants.

SCOTT E. DUFF and W. C. EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

This appeal involves a contest of the last will of Ira Combs, deceased. He died in Perry county, Ky., a resident thereof, on the 8th day of April, 1934, at the proximate age of 90. His will was executed on the 8th day of March, 1919, when he was at the age of 75. On the 11th day of June, 1934, his will was duly probated and admitted of record. On the 17th day of September, 1936, appellees filed an appeal to the Perry circuit court. By proper pleadings the issues were formed. On May 19, 1936, a trial was had resulting in a verdict of the jury finding that the paper offered was not the last will

and testament of Ira Combs. From the judgment based on that verdict, this appeal is prosecuted.

The grounds relied upon for reversal are: (1) Because the court erred in admitting incompetent and irrelevant evidence offered by the contestants, over the objections of contestees; (2) because the court erred in refusing to admit competent and relevant evidence offered by the contestees; (3) because the court erred in permitting the contestants to introduce evidence in chief after contestees had closed their evidence in chief; (4) because the court erred in his instructions to the jury; (5) because the verdict is not sustained by sufficient evidence, and is the result of passion and prejudice upon the part of the jury; (6) because the verdict is contrary to law for the reason that there is not a scintilla of evidence to warrant the submission of the case to the jury, or to sustain the verdict; and, (7) because the court erred in overruling propounders' and contestees' motion for a directed verdict in their favor.

We think a proper solution of the whole case depends upon the issue as to whether or not, at the time the testator executed his will, he had mind and memory enough to understand that he was selecting the persons whom he wished to have his property, and whether he knew at the time his property and natural objects of his bounty and his duty toward them and upon those whom he disposed of his property, or was he unduly influenced or induced to dispose of or give his property contrary to his own settled inclination and purpose? If from the evidence found in the record the court should reach the conclusion that he was mentally capable of making the will and was not unduly influenced to do so contrary to a settled purpose of his own, then the other alleged errors need not be considered, for such errors, if in fact they were errors, may never again occur.

The will that is contested is as follows:

"I, Ira Combs, being of sound mind and memory, and realizing that death must ultimately come, make and declare this my last will and testament.

"I devise and bequeath to my wife, Matilda Combs, and to George Combs, Dallie Logan, William Combs, Lettie Combs, Sammy Combs, Eli Combs and Norman Combs, my children by my said

wife, Matilda Combs, all of my real and personal property of every kind and description, and where-ever situated, share and share alike.

"I have heretofore given my children and grand-children by a former marriage, as a full advancement to them, out of my estate, money or other property as follows:

"To my daughter, Becky Ann Combs, and to her children $545.50; to my daughter, Susie Combs, $657.75; to my daughter, Eliza Jane Cornett, $510.55; to my son, Elijah, $818.70; to my son, Talton, $560.00; to my daughter, Mary Caudill, $778.90; to my grand-son, Ira Combs, Jr., son of Orlin Combs, deceased, $512.50.

"Having made these advancements from time to time as set out, and desiring that my heirs resulting from my last marriage, to whom I have advanced nothing, shall share as nearly equal as possible with the children of my first marriage, I make this will.

"Subscribed by me in the presence of the attesting witnesses, March 8, 1919. Ira Combs. Witnesses: B. P. Wootton, E. Kelley, M. D., J. P. Boggs."

The undisputed facts are as follows: Ira Combs was very active throughout his long and useful life. He was a farmer, merchant, and businessman, and also a minister of the gospel. In fact, his interest in the promulgation of religious principles was so intense that he erected a church and preached to his neighbors at times up to and within a few months just prior to his death. He was married twice. His first marriage was when very young. By that marriage there were eight children. His first wife died before he reached the age of 50, leaving him with a number of his children unmarried and uneducated, living with him, the youngest of whom was less than 6 years of age. Soon after the death of his first wife, when about 50 years of age, he married his second wife, Matilda Combs, one of the contestees herein, who was at that time 26 years of age. By this marriage there were born and reared by them eight children. His last wife assisted him in rearing several of the children of his first wife. The evidence

is convincing that his last wife made him a true and loving companion. . There is no evidence indicating otherwise, than that she was a hard-working, economizing, dutiful, and true helpmeet. We find no evidence of probative character tending to establish the fact that she or any of her children undertook to or made the slightest effort to induce the testator to execute the will now in controversy. The evidence is conclusive that he, of his own will, and in pursuance of a settled and fixed purpose of his own, left his home, which was about six miles from Hazard, the county seat of the county, and went to the county seat and sought the service and advice of a reputable attorney and had him prepare his will. At the time he did so, was about 15 years before his death, when he was near 75 years of age, and at a time when his mind and health were sound, as shown by the evidence of Drs. E. Kelley and J. P. Boggs, both physicians of high standing of the county. After the preparation of the will, these doctors, who officed in the same building with the attorney, who prepared it, were called upon to witness the signature of Combs. They gave evidence that his mind was good at the time he signed the paper and that they were present when he did so and each witnessed his signature in his presence. It is also in evidence given by Dr. A. M. Gross, who at the time was county judge of Perry County, and who held that office for at least 4 years, and who had known Ira Combs all of his life, and who had practiced medicine in the county for more than 30 years, that on the day that his will was executed, to wit, on March 8, 1919, Ira Combs possessed his normal faculties and mental powers and had sufficient mentality to understand the natural objects of his bounty and to know his property and to make a will according to a fixed purpose. His evidence was to the effect, as was the other doctors, heretofore named, that he was a man above the average; in fact, an unusually intelligent man. Dr. Gross further stated that his mental condition continued until the time of his death. This evidence establishes beyond doubt that, when his will was executed, his mental condition at the time was good.

Counsel for appellees virtually abandon the contention that, at the time of the execution of the will, the mind of the testator was unsound, but rather base their

ground of contest upon the sole issue that, at the time the will was attested by the doctors, referred to, and written by the attorney, it was not the voluntary act and will of Ira Combs; but that he was unduly influenced in the execution thereof by his wife and several children by her. We are unable to see any merit in this contention. It is true that, at the time of the execution of the will, the testator had reached the age of 75 years or more and it is also true that he was at that time living with his wife; that she was healthy and strong as were his children, but we find no evidence that the wife or any of her children, in the slightest manner, tended to exercise undue influence over the testator in causing him to make and execute the will in controversy.

In Childers' Ex'x v. Cartwright, 136 Ky. 498, 124 S. W. 802, 804, we said:

"This must be shown by evidence at least tending to establish that undue influence was exercised upon the testator. It is not sufficient that it be shown that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised; some evidence must be adduced showing that such influence was exercised. The law permits the owner of property, who is of sound mind and disposing memory, to transmit his property by last will and testament in such manner as pleases him, and juries are not permitted to make for him a will that accords with their ideas of justice and propriety; nor are they permitted to suspect away the right of the testator to dispose of his property in accordance with his own will and desire."

Again, in Hildreth, Ex'x, et al. v. Hildreth et al., 153 Ky. 597, 156 S. W. 144, 146, we said:

"To permit the verdict to stand in this case would be to allow the jury to dispose of the testator's property in a manner that would not accord with his intentions, which he was clearly competent to express as shown by the instrument itself."

In Bailey, Adm'r, et al. v. Bailey et al., 184 Ky. 455, 212 S. W. 595, 596, we said:

"Undue influence is any influence obtained over the mind of the testatrix to such an extent as to destroy her free agency and to constrain her to do

against her will what she would otherwise refuse to do, whether exerted at one time or another, directly or indirectly, if it so operated upon her mind at the time of the making or execution of the will. Watson's Ex'x v. Watson, 137 Ky. 25, 121 S. W. 626; Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134; Jones v. Beckley, 173 Ky. 831, 191 S. W. 627; Talbott, Ex'x, et al. v. Giltner, 179 Ky. 571, 200 S. W. 913; Robinson v. Davenport, Ex'r, 179 Ky. 598, 201 S. W. 28; Schrodt's Ex'r, etc., v. Schrodt, etc., 181 Ky. 174, 203 S. W. 1051.

"Mere general or reasonable influence over the testatrix is not sufficient to invalidate a will; to have this effect the influence must be undue; that is, not right or not proper. Acts of kindness, attention, advice, suggestions, or appeals to the feelings or understanding, not destroying free agency, must not be mistaken for undue influence."

In Seals v. Seals, 213 Ky. 779, 281 S. W. 982, 984, we said:

"One possessing testamentary capacity and not unduly influenced, may dispose of his property by will in any way he pleases even though it does not accord with the views of the members of the jury as to right or justice, and appears to be unequal or unfair to the devisees. Cecil's Ex'rs v. Anhier, 176 Ky. 198, 195 S. W. 837.

"Undue influence means a wrongful influence, and influence secured through affection and acts of kindness is not wrongful, therefore, not such as would justify a court of equity in setting aside a conveyance. Chrisman v. Quick, 174 Ky. 845, 193 S. W. 13.

"Mere general or reasonable influence over the testator is not sufficient to invalidate a will; to have this effect, the influence must be undue, that is, not right or not proper. Huff v. Woosley, 184 Ky. 605, 212 S. W. 597."

Applying the aforesaid principles of law to the facts relied upon by the contestants, is there sufficient evidence to base the issue of undue influence in the instant case?

It is insisted by counsel that, on the application of the scintilla doctrine, there was slight evidence of undue influence exercised by the widow and her children on the mind of the testator.

It is true that it has often been held by this court that, if there is a scintilla of evidence supporting the contentions of the contestants, then the question should be submitted to the jury, but we have further held that where the evidence, as in the instant case, is fragmentary, vague, irrelevant, and not of a direct and convincing character, and not sufficient to carry with it the quality of proof to induce conviction, the scintilla doctrine should not be applied. The scintilla rule does not mean that something can be made out of nothing. It cannot give the effect of supplying or furnishing proof when there is none. It cannot elevate a mere probability to a degree of proof. There must be some degree of competent and relevant evidence to make it effectual.

We are unable to find any evidence tending to establish undue influence on the part of the contestees, or either of them, that would in any manner destroy the free agency of Ira Combs, or constrain him against his will to do what he would refuse to do, had he not been so influenced. The evidence is conclusive that Matilda Combs, the wife, and their children, or some of them, lived together with him, and that she, as well as his children, were kind to him, as he was to them. That fact of living in the same house, and under their influence, is not sufficient to sustain or establish undue influence. Mere general or reasonable influence, as was shown to have existed in this case, is not sufficient to invalidate the will, for such influence on her part, to be effective, must reach that degree that is undue, and in fact, evil in its purpose. The evidence here is to the effect that this will was written not at his home, but at a time when his wife and her children knew nothing of it. In fact, he left his home and went six miles to the county seat and had it written. After having it prepared and executed, it was placed in an envelope, sealed, and brought home; placed in a trunk, where it remained about 15 years, until a short while before his death, when he gave it to his wife, Matilda Combs, and told her that it was his will.

It is further shown by the evidence that the en-

velope was not opened until after his death, when it was taken in that condition to the county judge of the county seat and there opened and probated as the law directs.

The only evidence on which counsel for appellees base their grounds to set the will aside is the fact that, after he had married Matilda Combs, and during their married life, he sold the minerals on his tract of land for the sum of $6,000; a right of way through his land to the Louisville and Nashville Railroad Company for $2,200; two rights of way through his land to the Highway Commission, for the purpose of building a highway, for the sum of $1,000; sold all of the timber off of his land for the sum of $2,500; and that, during the time that he was her husband, he drew from the government by virtue of a pension, a sum in the neighborhood of $30,000. The complaint is made that this money was used by Matilda Combs and her children and the contestants received no part thereof. For that reason, the will should be set aside, because of undue influence. That testimony is of no probative value. In fact, Ira Combs had the right to sell and use his property as he wished and spend the money as he desired. Such testimony could not be considered as probative evidence upon the question of undue influence—the issue here.

It is also in evidence that, after Ira Combs married his last wife, some of his older children claimed that she was not as friendly with them when they visited their father, as she might have been; that on certain occasions they would visit him, but were never given the opportunity at any time to be with him except in the presence of some member of the family. It is also in evidence that he had stated at times that he wanted to equalize his children. In fact, he attempted to do that in the preparation of his will, which is shown upon its face. It is also in evidence that at one time one of the sons of Matilda Combs announced that he would leave his father unless he would give him his store. At another time, Mrs. Mollie Combs, one of the contestants, stated that she heard Matilda Combs on one occasion say: ''If Ira went against me for the older children, I would not live with him''; said she heard her say that about twice. Even if Matilda Combs made that statement, which she denies, it is not sufficient to support the ground of undue influence. In fact, such testimony does not tend to es-

tablish either mental incompetency or undue influence. On the other hand, much of the testimony presented by the contestants does establish the fact that Ira Combs was not only a strong-minded man and determined in his views and purposes, but was unusually intelligent. It is in evidence that one of the contestants, Talton Combs, stated that, before Ira Combs made his will, he heard his father say, that "his deceased son, Orlin's heirs, he did not think should share equally with the other heirs," but Talton said he told him that he thought they should, but he would not agree to anything else, and "I told him I would not agree for him to leave my oldest brother's child out without a full part because under the law he was entitled to same." His father then told him that "he would not agree to that," and he did not know whether he made a will at all until he died. Such testimony indicates that Ira Combs was a man of his own head and that he would not permit his children, or at least his son Talton, to make his will.

It was also in evidence by one of the contestants that the tract of land willed to the contestees, at one time was worth $80,000. At least, he said he could have sold it for that sum. It is also in evidence by another witness, introduced by the contestants, that it was of the value of $50,000. It is insisted by counsel for contestants that such facts are slight evidence of undue influence on the part of the contestees. There is no merit in that contention. In fact, we are unable to find any proof of undue influence that is even vague or uncertain. There is nothing more than a mere suspicion that undue influence had been exercised over the testator, for no other reason, except that his wife and some of his children, to whom he devised his property, lived in the house with him. No one ever suggested to him as to how he should make his will, except one of the contestants, Talton Combs, and he made a failure of his effort. We think Ira Combs distributed his estate fairly among his children, but, even if he did not, his mental powers being good, no sinister or undue influence being shown, he had a right under the law to will his property not only to his last wife and children, but to a less number of them should he have desired. Under the facts, we have no doubt of the validity of the will. Parks et al. v. Moore's Ex'r, et al., 265 Ky. 678, 97 S. W. (2d) 579;

Jackson's Ex'r v. Semones, 266 Ky. 352, 98 S. W. (2d) 505.

Having reached that conclusion, it is the judgment of the court that the trial court committed an error in refusing the peremptory instructions at the conclusion of the testimony asked for by the contestees.

Wherefore, the judgment is reversed with further proceedings consistent herewith.

Whole court sitting.