## Ecken's Ex'x et al. v. Abbey et al.

June 11, 1940.

Eugene Hubbard, Judge.

**450**

Boldrick & Gocke and A .M. Marret for appellants.

L. D. Greene and Richard Watts for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Mrs. Clara M. Ecken, a widow, died September 7, 1937, survived by Mesdames Lorena Abbey, Clara Link, Cecelia Gribbon, Elizabeth Leezer and Miss Mayme Ecken, as her only children and heirs at law. Thereafter a paper purporting to be her last will and testament was duly admitted to probate in the Jefferson county court. Mesdames Abbey, Leezer and Gribbon prosecuted an appeal from the order of the county court to the circuit court by filing therein a copy of the will

and a petition against Miss Ecken, individually and as executrix, and Mrs. Leezer, and the pastor of a church to whom a small bequest had been made, alleging in the petition that the will as probated in the county court was not the last will and testament of Clara Ecken.

Trial in the circuit court resulted in a verdict finding the paper which had been admitted to probate in the county court not to be the last will and testament of Clara Ecken. This appeal is from a judgment in conformity with that verdict.

Appellees' attack on the will was rested solely on the ground of undue influence. The execution of the will was attended by all formalities required by law and there was no attempt to show mental incapacity on the part of Mrs. Ecken, in fact all three of the daughters contesting the will testified that their mother was a woman of good mind.

The first paragraph of the will provided for payment of debts and the second bequest to a church for masses to be said. The third paragraph reads:

> "All the residue of my property, real, personal and mixed, wheresoever situated, I give to my daughter, Mayme Ecken, in fee simple, to do with as she pleases. I make this bequest to her because of her taking care of me and on account of her great kindness to me."

Appellees claim and undertook to establish by evidence that Mayme Ecken unduly influenced her mother to make this will. Counsel for appellants argue in effect that there is no evidence to sustain the charge of undue influence and therefore appellants' motion for a peremptory instruction should have been sustained and further that the court committed prejudicial error in the admission of incompetent evidence.

Mrs. Ecken first made a will in 1930 whereby she left all of her estate to her daughters, Mayme and Cecelia, who were living with her. Cecelia was then about 17 years of age and unmarried. The other three daughters were at the time married and living elsewhere. Later a codicil was appended to this will giving Mayme all testatrix' household goods. Sometime after the execution of the first will a divorced man began paying court to Cecelia. This met with the mother's objec-

tions. The courtship which had to be carried on surreptitiously culminated in an elopement and marriage contrary to the wishes of the mother and the canons of the church of which she and Cecelia were members. Mrs. Ecken did not know anything as to the whereabouts of Cecelia for some months after the marriage and was somewhat embittered against her. But later their relations seemed to become cordial. The paper in controversy was executed on June 22, 1937. The three appellees testified that their sister Mayme accompanied their mother practically everywhere she went and when asked if Mayme would permit others to talk to their mother about any business stated in substance that Mayme was nearly always present with her mother and would sometimes answer for her and sometimes Mrs. Ecken would turn to Mayme for answers. The evidence indicated that the presence of Mayme with her mother was because Mrs. Ecken could not drive and Mayme would have to take her in the automobile. Cecelia testified that when her mother and sister complained about her going with Mr. Gribbon who was divorced Mayme said to her in the presence of her mother that if she would not marry him she would see that she got half of the estate and that her mother said that if Cecelia married Mayme would get it all; but there is evidence that this was in accord with the provisions of the first will. She further testified that on one occasion she asked her mother why she left all her estate to her and Mayme and none to the other daughters and her mother said, "Mayme done it, she had it that way." On cross examination she stated that her mother said "Mayme had all to do with it." She also testified that Mayme told her mother to leave a dollar to each of the girls so they could not do anything about it. She stated that Mayme called and offered her $149 if she would come over on her side. There is evidence that all of the girls began working when they were very young and that until they reached their majority they would take their earnings to their mother; that after they attained their majority they paid board; that with the exception of the time above indicated the relations between the mother and daughters was cordial and she seemingly had equal affection for all of them.

Judge Samuel J. Bolderick who prepared both of the wills for Mrs. Ecken testified that prior to the execution of the first will she consulted him on matters of

business, the first being in connection with a claim for the death of her husband who was killed on a crossing of the L. & N.; that he advised her and assisted in the settlement of her husband's estate; that Mayme took no part in the matter and made no suggestions concerning any of these things; that when Mrs. Ecken came to his office to have the first will prepared she was accompanied by Mayme and Cecelia and that he took her into a private office and out of the presence of the daughters and she told him what distribution she wanted to make of her estate; that she said her other daughters were married and able to care for themselves; that she wanted the ones remaining at home single to have her property. A banker with whom Mrs. Ecken had done business for a number of years testified that Mrs. Ecken told him a number of times she was going to leave all of her property to Mayme; that he had a number of transactions with her and she consulted him about her business affairs; that Mayme accompanied her mother but never attempted to look after her mother's business or make suggestions concerning it. Mrs. Ecken had a savings account in the bank which she had made jointly in the name of herself and Mayme with right of survivorship. Later some of the funds were loaned on a mortgage note in the name of both of them. Mrs. Ecken was in poor health for some years before her death and a physician who treated her testified that she told him more than once that she was going to leave all her estate to Mayme and he and the banker testified that she assigned the same reason for making such distribution of the estate as she had to Judge Bolderick and some or all of them testified that she said Mayme was in poor health and had incurred considerable medical expense. There is evidence that Mayme was in delicate health, suffering from triple goitre and that she had undergone three serious operations.

Mayme Ecken testified that she never tried to influence or induce her mother to make a will or favor her in preference to her sisters. She denied that she told her mother to give the other daughters a dollar so they could not interfere with the will but admitted that in discussing wills at some time there was some talk of the prevailing idea that it would be necessary to give each heir a dollar in order to render the will valid. She also denied that she offered Cecelia $149 to come over on her side but said she told Cecelia to put in a claim for that

sum which the mother owed her. In this she was corroborated by her sister Mrs. Leezer. Mrs. Leezer's evidence is to the effect that Mayme did not interfere in her mother's affairs or attempt to influence her. The evidence of the lawyer who prepared the will, the banker, the physician and a number of other witnesses who testified indicates that Mrs. Ecken was a woman of good mind, strong will and determination and that she could not be easily influenced.

Taking into account all the proven facts and circumstances it may be said at the outset that Mrs. Ecken's will does not appear to be unreasonable or unnatural. Her estate, comparatively speaking, was small. Mayme was unmarried, in frail health and getting along in years. Notwithstanding her frail health she had for a number of years looked after all the household affairs and the comfort of her mother. The other daughters had husbands to care for them. But, wholly apart from that question the law gave her the right to make such testamentary disposition of her property as she might desire. Her will which was executed in conformity with all requirements of the law and when according to the evidence she was mentally capable of making a will should be upheld if it was her free, voluntary act. Undue influence sufficient to avoid a will must be such influence obtained or exerted over the mind of the maker as to destroy his or her free agency and to constrain the doing against the will of what otherwise would not have been done if it so operated upon the mind of the maker at the time the will was executed. Bailey v. Bailey, 184 Ky. 455, 212 S. W. 595; Combs v. Combs, 271 Ky. 543, 112 S. W. (2d) 989. Discriminatory and unnatural disposition of a testatrix' estate is not sufficient alone to establish undue influence but may be considered in connection with other evidence bearing on the question. See Mossbarger v. Mossbarger's Adm'x, 230 Ky. 230, 18 S. W. (2d) 997, 999. However in that connection it may be noted that as we have already pointed out, the proven facts and circumstances do not indicate unnatural or unreasonable disposition in this instance. Mossbarger v. Mossbarger's Adm'x, supra, and cases therein cited. Furthermore in the Mossbarger case it is said:

"Reasonable influence, acquired by kindness, good treatment, and affection, is not unfavorably re-

garded, and testamentary rewards to those having such influence are not interdicted."

And that conclusion is fortified by numbers of cases, many of which are cited in the opinion. It is not sufficient to show mere opportunity to exert undue influence but there must be evidence of overt acts or surreptitious exercise of such influence or from which natural or reasonable inferences of such would arise before a case should be submitted to a jury. See Parks v. Moore's Ex'r, 265 Ky. 678, 97 S. W. (2d) 579 wherein authorities bearing on this phase of the case are discussed. In that case it was held that the trial court did not err in peremptorily instructing the jury to find for the proponents of the will; and a reading of the opinion will reveal that appellees here made no stronger showing of undue influence than was made in that case. The evidence clearly indicates that Mrs. Ecken for years had a fixed purpose concerning the disposition of her property which she carried out. In the first will she gave her estate to her unmarried daughters to the exclusion of those who were married but provided that if either of the devisees should marry it would go to the other. If it was Mayme's purpose to take her mother's estate to the exclusion of the others and to unduly influence her mother to that end, she clearly failed in that purpose in the first instance as is evidenced by the fact that by the first will half the estate was given to Cecelia. After all the last will makes the same disposition of testatrix' estate as in the circumstances would have been made if the first will had stood and testatrix was carrying out the same fixed purpose evidenced by her first will and her statements to many disinterested witnesses.

Possibly under the scintilla rule formerly existing in this jurisdiction it would have been proper to submit the issue to the jury; but in the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, 883, that rule was abolished and it was said:

"For future guidance, the rule of practice replacing the scintilla rule is declared in the following terms, namely: 'When the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to

submit the case to the jury, but should direct a verdict for the defendant.' ''

We unhesitatingly conclude that the evidence was insufficient to support the verdict.

However, the judgment would have been reversed for other reasons. The court over objections of appellants permitted Cecelia Gribbon to testify that she did not receive her portion of her father's estate from her mother. If such was the case she had a claim against the mother's estate for such sum, but she would not take it by inheritance or by will from her mother. It is manifest that this evidence was calculated to and no doubt did influence the minds of the jurors and therefore its admission was prejudicially erroneous. There was also evidence as to bad feeling between Mrs. Ecken and her husband and that at times she and some of her daughters did not speak to him and also evidence about the disposition of his estate. Some of this was objected to at the time of its introduction and appellants requested the court to give an instruction to the jury to disregard it. In the circumstances such evidence had no relevant bearing on the issues involved. In the event of another trial this evidence should not be admitted.

For the reasons indicated, the judgment is reversed and the cause remanded for proceedings consistent with this opinion.