J. W. WARNICK et al., Appellants,

v.

Birdie Vaughan CHILDERS, Appellee.

Court of Appeals of Kentucky.

Sept. 30, 1955.

Chesley A. Lycan, John T. Diederich, Diederich & Lycan, Ashland, for appellants.

Clyde L. Miller, Louisa, Kit C. Elswick, Lexington, for appellee.

MOREMEN, Judge.

By this action the appellants have contested the will of William Warnick on the grounds that he was unduly influenced in its execution and lacked mental capacity to make it. At the trial the court refused to submit to the jury the undue influence issue. The jury found the will to be valid.

The will under attack was executed by decedent on September 29, 1952, some three months before his death, and when he was about 75 years of age. The will is in simple form and contains the customary clauses relating to debts and funeral expenses. The bulk of the estate was given to a niece, Bertie Childers, who received about $11,-

851.46 cash, the decedent's home place with about 30 acres of land, and other personal property. The remainder of the estate, which consisted of a tract of land adjoining the home place (valued at about $4,000 by the contestants), was devised per stirpes to the 16 children or grandchildren of the testator's deceased brothers and sisters. It is the latter class who contest the will and, as appellants, prosecute this appeal.

On this appeal, appellants state in their brief that the finding of the jury on the issue of mental capacity was "contrary to the evidence," and that the issue of undue influence should have been submitted to the jury. However, a ground in the motion for a new trial was "the verdict is not sustained by sufficient evidence. and is contrary to law" so we will briefly discuss the evidence in order to determine whether it was sufficient to sustain the verdict.

The decedent lived in the vicinity of Richardson, and Bertie Childers, who received the bulk of the estate, lived about a mile from him. During the latter part of 1951 and a part of 1952, decedent, Warnick, would stay with her at night and return to his home during the day. However, during a portion of 1952, through his period of sickness and until his death, Warnick stayed the entire time with appellee who cared for him and ministered to his needs.

To support the contention that Warnick did not have mental capacity to execute a will, appellants introduced numerous witnesses who testified concerning specific instances which indicated to them that decedent lacked requisite sanity. Some of the things they pointed out were that he could not carry on a connected conversation, heard strange voices, was afraid, forgot names, could not remember directions, and occasionally got lost. We evaluated the legal effect of acts such as these in Dixon v. Dixon, 236 Ky. 608, 33 S.W.2d 611.

■ Considerable testimony related to his physical condition and there is no doubt that in his latter years his health was not good. Dr. William F. Marting, a well qualified physician who had practiced since 1897, testified that he treated decedent at various times between 1944 and 1948 for the disease of arteriosclerosis, and stated that in 1948 the illness had progressed to such a stage he concluded the decedent was of unsound mind. We have said that proof of previous insanity, such as that contained in Dr. Marting's testimony, without evidence of its continuity down to the day of the will's execution does not invalidate the will. Pfuelb v. Pfuelb, 275 Ky. 588, 122 S.W.2d 128. There is some evidence introduced on behalf of appellants which, under some conditions, might tend to show continued insanity from 1948 to 1952, but it is in marked conflict to the testimony offered by appellee, and even the testimony given by the medical experts is in sharp contrast.

The proponent of the will was able to show that decedent transacted in good fashion his own business up until the time of his death. The last transaction was a contract to build and pay for a fence around a cemetery lot. Some three months before his death he visited the office of an attorney —who had known him many years and who had handled his legal business for about fifteen years—and told him that he desired to make his will, gave him directions concerning disposition of his property, and then executed it. This attorney testified he was of opinion that decedent was of sound mind. A bank official who cashed a U. S. Savings Bond for decedent about ten minutes after the will was executed testified that he was of the same opinion. Decedent's regular physician, Dr. Forrest Shely, also a qualified physician, who treated him during his last illness and who had seen him about the time the will was executed, testified that he was capable, up until the day before he died, of knowing the proper object of his bounty, the extent of his property and of disposing of it according to a fixed purpose. Several other witnesses were also produced who were of opinion that he was of sound mind.

■ The evidence not only supports the verdict, but preponderates in its favor.

We have held that a person, in order to make a will, need not have the high degree of capacity required to make a contract. Moore v. Moore, 290 Ky. 715, 162 S.W.2d 547. The proof in this case shows that decedent transacted his own business in a capable manner before, at the time of, and after the will was executed. The bare fact that decedent saw fit to consult his attorney and have a will prepared for him supports the argument for his sanity. Teegarden v. Webster, 304 Ky. 18, 199 S.W.2d 728. It is true that decedent was a sick man during his last days but, as we pointed out in Kentucky Trust Co. v. Gore, 302 Ky. 1, 192 S.W.2d 749, the courts guard jealously the right of all rational people, including the aged and infirm, to make a will. We think the jury had an abundance of evidence upon which to base its finding.

■ We turn now to the appellants' argument that the court erred in not submitting to the jury the issue of undue influence. They rely upon Smith v. Ridner, 293 Ky. 66, 168 S.W.2d 559; Allen v. Henderson, 299 Ky. 92, 184 S.W.2d 885; Hines v. Price, 310 Ky. 758, 221 S.W.2d 673; Marcum v. Gallup, Ky., 237 S.W.2d 862; and McKinney v. Montgomery, Ky., 248 S.W.2d 719, which set out the general rule that less evidence is required to submit to the jury the issue of undue influence when there is present evidence of probative value tending to show the testator was insane or where there is an unnatural disposition of gross inequality in the distribution of the estate. While we agree with the rule relied upon, we do not believe it has application to the facts of the case at bar.

■ Birdie Childers, to whom the bulk of the estate was left, kept and cared for the decedent the last few years of his life. She was the only niece who lived in the vicinity of the decedent's community, the other nieces and nephews living outside Lawrence County in Ashland and other places and only seeing the decedent on rare visits. We believe it only natural that the decedent should give preference to the widowed niece, Birdie Childers who lived nearby, with whom he lived and who cared for him in his latter years. Bickel v. Louisville Trust Co., 303 Ky. 356, 197 S.W. 2d 444. In addition, the principal contestants (appellants in the case at bar) had some years before unsuccessfully disputed the decedent's right to a gift causa mortis of $15,000 in cash from a sister, which action on their part had necessitated a suit to clarify the matter. This, in itself, gives some reason for the manner of the disposition of his estate under the will.

■ Appellants seem to rely strongly upon the fact that Birdie Childers had the opportunity to exert influence upon the decedent during his failing years. We have held, however, that opportunity without proof is not enough to take the case to the jury. Prichard v. Kitchen, Ky., 242 S.W. 2d 988; Karr v. Karr's Ex'r, 283 Ky. 355, 141 S.W.2d 279; Moore v. Moore, 290 Ky. 715, 162 S.W.2d 547. It is true that there is in the record testimony of some of the contestants and also of a few of the neighbors that the decedent had in years past stated he was not going to make a will since there had been family fights over the distribution of the estates of his deceased sisters, but we cannot infer from this that he was unduly influenced to change his mind, and no facts even remotely suggesting acts of undue influence on the part of appellee were shown.

■ We believe the lower court acted correctly in refusing to submit the undue influence issue to the jury. Teegarden v. Webster, 304 Ky. 18, 199 S.W.2d 728; Prichard v. Kitchen, Ky., 242 S.W.2d 988.

Wherefore the judgment is affirmed.