**Donald L. BARNARD, Movant,**

v.

**Bill STONE, Rebecca Jackson; Jefferson County Board of Elections; State Board of Elections; and John Y. Brown, III, Respondents.**

No. 96–SC–845–I.

Supreme Court of Kentucky.

Oct. 31, 1996.

Donald Barnard, Louisville, William Lloyd Turner, Springfield, James D. Howes, Louisville, for movant.

Donald H. Vish, H. Powell Starks, Brown, Todd & Heyburn, Louisville, for respondent, Bill Stone.

Culver V. Halliday, Stoll, Keenan & Park, Louisville, for respondents, Rebecca Jackson, Jefferson County Clerk, and Jefferson County Board of Elections.

John E. Kuhn, Jr., Frankfort, for respondent, Secretary of State, John Y. Brown, III.

Maryellen B. Allen, Assistant Attorney General, Frankfort, for respondent, the State Board of Elections.

LAMBERT, Justice.

This cause comes before the Court for review of the opinion and order of the Court of Appeals entered herein on September 10, 1996. According to said opinion and order, the final judgment of the Jefferson Circuit Court allowing movant, Donald L. Barnard, to appear on the November, 1996, general election ballot as an independent candidate for the United States House of Representatives from the Third Congressional District of Kentucky was set aside. Pending determination by the full Court, this Court's Chief Justice stayed the opinion and order of the Court of Appeals and reinstated the judgment of the circuit court. As set forth in this Court's order of October 18, 1996, the order of the Chief Justice has been vacated and the order of the Court of Appeals has been affirmed. The purpose of this opinion is to disclose the reasons for our decision.

As found by the trial court, movant's nominating petition contained the unquestionably valid signatures of 398 persons. It also bore the names of four other persons who authorized their names to be affixed to the petition but did not personally sign it. KRS 118.315(2) provides that a petition of nomination for a representative in Congress shall contain 400 petitioners and "shall be signed by the candidate and by registered voters from the district or jurisdiction from which the candidate seeks nomination." Thus, if it is finally determined that movant's nomination petition contained fewer than 400 valid signatories, he must be disqualified; but if his petition contains 400 or more such signatories, he is entitled to be on the ballot.

In its final judgment, the trial court relied upon *Prichard v. Kitchen,* Ky., 242 S.W.2d 988 (1951), and *Widick v. Pursifull,* 299 Ky. 773, 187 S.W.2d 447 (1945), for the proposi-

tion that upon nominating petitions, voters may authorize others to sign such petitions for them provided it is done at the direction and in the presence of the person authorizing his name to be signed. Our decision in *Widick* was in a local option election and based upon a statute, KRS 242.020, which appears to have contemplated that a person's name could be placed upon a petition without that person's signature but with his authorization, as the statute provided a means for the person whose name appeared on the petition to go before the county court and have his name eliminated if it had been placed there without his authorization.

Our decision in *Prichard* broadly states that "where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own and has the same effect as though written by the person himself." *Id.*, 242 S.W.2d at 990. *Prichard* was a will case, however, and the statute under construction was KRS 394.040 which provides that if the will is not holographic, "the subscription shall be made or the will acknowledged by him [the testator] in the presence of at least two (2) credible witnesses, who shall subscribe the will with their names in the presence of the testator, and in the presence of each other." Thus, the broad language in *Prichard* must be considered with regard to the statute it construed and qualified to that extent.

Another decision which stands generally for the proposition that one may authorize another to sign his name upon a nominating petition is *Ledford v. Hubbard*, 219 Ky. 9, 292 S.W. 345 (1927), a case which appears to have been rife with questionable practices, e.g. the disappearance of one whole page of signatures from a petition, the substitution of pages from one petition to another, and similar apparently dishonest practices. Holding that the petition under review lacked the necessary number of signatures, the Court stated that the formality required to make a signature to such a petition was the same as that which is required to make a signature to a deed or a contract or a will.

■ In the case at bar, the Court of Appeals reversed the trial court. That court looked to the prevailing version of KRS 118.315(2), as enacted in 1974 and most recently amended in 1992, and concluded that the language "shall be signed ... by registered voters" precluded a voter from authorizing another to sign for him or her. In addition to strict construction of the language, the court expressed concern for the possibility of fraud and abuse and its potential to affect the integrity of the electoral process.

We have carefully considered the older cases cited herein and the more recent statute here under review. In our opinion, the statute is sufficiently explicit and unambiguous to require its literal application. *Lynch v. Commonwealth*, Ky., 902 S.W.2d 813 (1995). Moreover, when the language is coupled with the provision in KRS 118.315(2) which requires petitioners to disclose their residence, social security number or date of birth, and post office address, it is apparent that the statute clearly contemplates the existence of a means whereby the validity of signatures can be verified. With verification as a central purpose, it would be contradictory to permit one person to sign for another, thereby eliminating the ability to compare signatures on nominating petitions with signatures on voter registration forms. The interpretation urged by movant whereby a voter could authorize another to sign for him would undermine the integrity of the process. If extended to its logical conclusion, one could appear before a great assembly of persons and, on receiving their oral or gestured assent, sign the name of every person present to a nominating petition.

The decisions of this Court require strict compliance with election statutes. In *Thomas v. Lyons*, Ky., 586 S.W.2d 711 (1979), we rejected a substantial compliance argument on grounds that such would amount to an unauthorized amendment of the statute. In *Morris v. Jefferson County Clerk*, Ky., 729 S.W.2d 444 (1987), we similarly rejected substantial compliance and invalidated the candidacy. Illustrative of public policy with respect to election laws is KRS 117.075, *et. seq.*, statutes which deal with disabled and absentee voters. These statutes go to great lengths to assure the integrity of voting while, nevertheless, assuring the right of

qualified persons who may be disabled or have cognizable grounds for absentee voting to participate in elections. It would be absolutely contrary to the spirit of the foregoing statutes to allow surrogates to sign for voters on nominating petitions.

■ At oral argument a question was raised as to whether a person who was disabled could authorize a surrogate to sign for him or her on a nominating petition. Upon inquiry it was established with certainty that no disability claim was raised in the trial court and therefore no preserved question appears here with respect to disability. It does appear that after the case reached the Court of Appeals, an affidavit was filed by movant whereby he stated that one person who directed his wife to sign the petition for him was "disabled to the point that his right hand shook so bad that he could not hold a clipboard while standing in order to sign my petition." This affidavit was not before the trial court and, under our procedural rules, may not be considered on appeal. CR 46. *Feltner v. Commonwealth*, Ky., 240 S.W.2d 552 (1951). Even if this person's possible disability had been timely raised and if his signature had been determined to be valid, movant would still fall short of the requisite 400 valid signatories.

By virtue of KRS 118.176(3), the burden of proof as to lack of *bona fides* of a candidate is upon the challenger. Based upon the facts found by the trial court and our application of the law thereto, we have determined that the challenger met this burden by establishing that movant obtained only 398 valid signatories upon his nominating petition. As such, his attempted nomination has been invalidated and his name stricken from the ballot, or if such is determined to be impracticable, the provisions of KRS 118.212(5) shall be observed.

For the foregoing reasons, consistent with our order entered herein on October 18, 1996, this cause is remanded to the Jefferson Circuit Court for entry of a conforming judgment.

BAKER, GRAVES, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which STUMBO, J., joins.

KING, J., not sitting.

STEPHENS, Chief Justice, dissenting.

Respectfully, I must dissent. The majority's opinion attempts, through its literal interpretation of KRS 118.315(2), to overturn an abundance of case law regarding what legally constitutes a valid signature. The current version of KRS 118.315(2), as enacted in 1974 and most recently amended in 1992, states in pertinent part:

> The form of the petition shall be prescribed by the State Board of Elections. It shall be signed by the candidate and by registered voters from the district or jurisdiction from which the candidate seeks nomination.

The majority's opinion asserts that the language in KRS 118.315(2) referring to "signed" is unambiguous and, thus, requires a literal interpretation. Relying on the decision of the Court of Appeals, the majority further argues that a literal construction of the word "signed" is necessary to protect the integrity of the election process. They maintain that "[w]ith verification as a central purpose, it would be contradictory to permit one person to sign for another, thereby eliminating the ability to compare signatures on nominating petitions with signatures on voter registration forms." The majority arrives at this conclusion despite the fact that this Court has set precedent to the contrary.

*Ledford v. Hubbard*, 219 Ky. 9, 292 S.W. 345, 347 (1927), involved a contest to the signatures on an election petition under the predecessor to KRS 118.315, Ky.Stat. § 1453. Adopting the language of *Morgan v. Revis*, 215 Ky. 30, 284 S.W. 111 (1926), the Court in *Ledford* held that Ky.Stat. § 1453 " 'contemplated either a personal signature, or one made by another in the presence of the person whose name was signed.' " This Court went on to state that:

> It requires neither more nor less formality to make a signature to such a petition as this, than it does to make a signature to a deed, a contract, or a will.

*Id.* 292 S.W. at 347–48. See *W.J. Fell Co. v. Elswick,* 194 Ky. 641, 240 S.W. 373 (1922); *Savage v. Bulger,* 76 S.W. 361, 25 Ky.L.Rptr. 763 (1903); 77 S.W. 717, 25 Ky.L.Rptr. 1269 (1903); *Middlesborough Waterworks v. Neal, et al.,* 105 Ky. 586, 49 S.W. 428, 20 Ky. L.Rptr. 1403 (1899).

Similarly, *Widick v. Pursifull,* 299 Ky. 773, 187 S.W.2d 447, 447 (1945), also involved the attacking of certain signatures on a petition calling for an election concerning the sale of alcohol. Quoting the language in *Ledford, supra.,* this Court in *Widick* held that:

> It has long been the settled rule in this and other jurisdictions that where a person's name is signed for him, at his direction, and in his presence, by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself ... This rule is based upon the familiar maxim, 'qui facit per alium facit per se.' (He who does a thing through another does it himself). When a subscribers name is written for him by another in his presence and by his parol authority, the act is deemed to be his as much as if he had done it in person, and the person actually writing the name is regarded, not as an agent, but as a mere instrument or amanuensis.

*Id.* 187 S.W.2d at 448; *Ledford,* 292 S.W. at 348.

Likewise, *Boyd v. Alexander,* Ky., 284 S.W.2d 85, 86 (1955), involved objections to a petition calling for a local option election on the grounds that the petition had not been signed by 25% of the duly qualified voters in the county. Applying the law set forth in *Widick* and *Ledford,* the Court held that when evidence is produced that a signature on a petition was not made by the alleged signer

> the burden shifts to the proponent of the document bearing the signature to prove by evidence that the signature was written for the alleged signer in his presence and by his direction. The rule is that a signa-

ture is self-probative until some evidence over-comes that presumption.

*Id.* at 87.

Also addressing the issue of signature requirements, *Prichard v. Kitchen,* Ky., 242 S.W.2d 988, 990 (1951), involved the contest of a will which was not actually signed by the testator, but at his direction. Once again adopting the holding of *Widick* and the language in KRS 394.040,[1] the court held that "[w]here a person's name is signed for him at his direction and in his presence by another, the signature becomes his own and has the same effect as though written by the person himself." *Id.*

The requirement of "signing" has generally been considered a term of art within the legal community. Black's Law Dictionary defines "signed" as "any symbol executed *or adopted* by a party with present intention to authenticate a writing." *Black's Law Dictionary,* 1381 (6th ed. 1990) (emphasis added). Likewise, it defines "signature" as: "[t]he name or mark of a person, written by that person at his or her direction." *Id.* at 1382. In addition, the same definition of what constitutes a signature can also be found in Kentucky statutes dealing with wills and contracts. KRS §§ 394.040, 355.1–201(39), 355.3–401(2) and 355.3–403.

The majority argues that:

> The interpretation urged by movant whereby a voter could authorize another to sign for him would undermine the integrity of the process. If extended to its logical conclusion, one could appear before a great assembly of persons and, on receiving their oral or gestured assent, sign the name of every person present to a nominating petition.

I disagree. If an actual handwritten signature was necessary for verification purposes, then why did the General Assembly also necessitate that a voter provide his "residence, Social Security number or date of birth, and post-office address?" Clearly, the legislature contemplated more than a handwritten signature as a means of verifying names on an election petition.

---

1. KRS 394.040 addresses what requirements are necessary for a valid will in Kentucky.

Moreover, the specific requirements of former Ky.Stat. § 1453 stated, in pertinent part that:

The county clerk of each county shall cause to be printed on the respective ballots the name of the candidates nominated by the convention or primary election of any party that cast two per cent of the total vote of the state at the last preceding general election, as certified to the said clerk by the presiding officer and secretary of said convention, or in the case of a primary election by the secretary and chairman of any district committee; and also the names of any candidate for any office, when petitioned to do so by electors qualified to vote for such candidates, as follows ...

The signatures of such petition need not be appended to one paper, but no petitioner shall be counted except his residence and post office address be designated. Such petition shall state the name and residence of each of such candidates; that he is legally qualified to hold such office; that the subscribers desire, and are legally qualified, to vote for such candidate....

Basically, there is no radical difference between the requirements in Ky.Stat. § 1453 and those in KRS 118.315. Both statutes speak in terms of a precise number of qualified voters' signatures to be on the petition. Both require the petitioner and the voter to list his residence and post office address. Both dictate that the petition for election should be filed with the Secretary of State and the county clerk. Even though some of the language was changed when Ky.Stat. § 1453 was codified in Kentucky's Revised Statutes, the crux of the statute, voter verification and integrity of the election process, was the same as that of its contemporary, KRS 118.315.

Furthermore, while limiting the use of *Prichard* to cases involving wills, the majority's opinion fails to set forth any explanation as to why *Ledford* should be disregarded, except that *Ledford* is a case "which appears to have been rife with questionable practices,

e.g. the disappearance of one whole page of signatures from a petition, the substitution of pages from one petition to another, and similar apparently dishonest practices." While *Ledford* did involve allegations of several questionable and dishonest election practices, our Court in that decision did not reach those issues, as they believed the case could be resolved on the sole issue of what constitutes an appropriate signature.[2]

While some case scenarios do necessitate that a court run afoul of court precedent and stare decisis, this is not one of those cases. The rules of statutory construction adopted by this state require that we interpret "signed" in its legal, as opposed to ordinary, meaning. KRS 446.080(4) specifically states:

All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning.

The Court of Appeals appropriately maintained this same concept in *Revenue Cabinet v. JRS Data Systems, Inc.*, Ky.App., 738 S.W.2d 828 (1987), asserting that words which have acquired a particular and an appropriate meaning in the law, must be construed according to that meaning and not according to the common and approved usage of such language. See also *London v. City of Franklin*, 118 Ky. 105, 80 S.W. 514, 25 Ky.L.Rptr. 2306 (1904).

Although many of the above mentioned cases pertaining to signatures are not recent, the law they set forth is not outdated and has not been overruled. We held in *City of Richmond v. Public Service Commission*, Ky., 294 S.W.2d 513, 514 (1956), *partially overruled by McClellan v. Louisville Water Co.*, Ky., 351 S.W.2d 197 (1961), that the failure of the legislature to amend a statute at its several sessions held since we rendered an interpretation of a statute, though not conclusive, was very persuasive that such

2. The Court did state, nevertheless, that they were persuaded from the facts that the conten-

tions of dishonesty were true. Thus, the Court would not have upheld any of these practices.

interpretation of the statute was correct.[3] Similarly, we more recently held that when statutory language has been repeatedly re-enacted by the General Assembly with a particular judicial interpretation, it must be considered to have been incorporated into the statute. *Borg–Warner Acceptance Corp. v. First Nat. Bank of Prestonsburg,* Ky.App., 577 S.W.2d 29, 32 (1979).

Of further importance is the fact that the majority's interpretation of KRS 118.315(2) is in direct contradiction to the recently federally imposed Americans with Disabilities Act (ADA). 42 U.S.C. § 12131, *et seq.* Specifically, the findings of the ADA suggest that "discrimination against individuals with disabilities persists in such critical areas as … *voting,* and access to public services." *Id.* (emphasis added). Consequently, Congress set forth one of the purposes for establishing the ADA as to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.*

Moreover, individual states, which includes Kentucky, are covered under the ADA as public entities. Such coverage requires that "subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, I believe the majority's literal as opposed to technical interpretation of the signature requirement renders KRS 118.315(2) in violation of the ADA as it discriminates against individuals whose disability prevents

them from actually "signing" their name to an election petition.

In conclusion, *Ledford* and its progeny are dispositive of the specific issue before this Court concerning when an election petition has been validly signed. No legitimate reason has been presented before this Court as to why we should overrule a long history of case precedent applying a technical construction in such contexts and apply the majority's literal construction instead.

Even if this Court does want to adopt a new definition of "signed" as it relates to KRS 118.315(2), they should do so prospectively, as Barnard complied with the law as it stood in Kentucky when he presented his election petition to the Secretary of State and the Jefferson County Clerk for review. Consequently, his name should not be stricken from the election ballot due to the majority's literal interpretation of the word "signed" in KRS 118.315(2); an interpretation that is radical to all areas of the law within this state. Accordingly, Mr. Barnard's name should be allowed to remain on the ballot as he complied with the signing requirements of KRS 118.315(2).

STUMBO, J., joins in this dissenting opinion.

---

**3.** Subsequent case law partially overruled this case, but did not affect the Court's analysis referred to above.