**Jack STOECKLIN, Appellant**

**v.**

**Elisabeth FENNELL; James Leursen, Campbell County Clerk; and Campbell County Board of Elections, Appellees**

**NO. 2016-CA-001780-ME**

Court of Appeals of Kentucky.

AUGUST 11, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Michael L. Schulkens, Cold Spring, Kentucky.

BRIEF FOR APPELLEE: Jeffrey C. Mando, Louis D. Kelly, Covington, Kentucky.

BEFORE: KRAMER, CHIEF JUDGE; CLAYTON AND THOMPSON, JUDGES.

## OPINION

THOMPSON, JUDGE:

Jack Stoecklin, a voter in the City of Newport, Kentucky, appeals from the opinion and order of the Campbell Circuit Court dismissing his action for injunctive relief and declaration of rights, and certifying the election of Elisabeth Fennell as a Newport City Commissioner. The sole dispute on appeal is whether by signing Fennell's nomination petition early, before November 4, 2015, voters rendered their signatures ineffective, thus depriving Fennell of having a valid nomination petition and voiding her subsequent election.

Pursuant to Kentucky Revised Statutes (KRS) 118.315(2) to be placed on the general election ballot for the position of city commissioner, Fennell was required to file a nominating petition declaring that she possessed all the statutory and constitutional requirements for her office, with two signatures by registered voters. It is undisputed that Fennell was personally qualified to be a candidate for city commissioner and her petition contained four signatures by registered voters.

KRS 118.315(2) also specifies that "[e]ach petitioner shall include the date he or she affixes the signature, address of residence, and date of birth. Failure of a voter to include the signature affixation date, date of birth, and address of residence shall result in .the signature not being counted." It is undisputed that each of the voters petitioning for Fennell to be placed on the ballot fully complied with this provision.

Both KRS 118.315(2) and KRS 83A.045(2)(a), (b)1 provide that "[s]ignatures for nomination papers shall not be affixed on the document to be filed prior to the first Wednesday after the first Monday in November of the year preceding the year in which the office will appear on the ballot." KRS 83A.045(2)(a), (b)1 also sets the deadline for filing the nomination petition. These statutes do not specify the result of failing to comply with these provisions.

The first Wednesday after the first Monday in November 2015 was November 4, 2015. Fennell filed her nomination petition timely on November 9, 2015, with signatures by four voters that indicated one signed on October 19, 2015, one signed

on November 2, 2015, and two signed on November 3, 2015.

Pursuant to statute, the county clerk was to examine Fennell's nominating petition to determine if it was "regular on its face" and notify her of any error. KRS 118.315(4); KRS 83A.170(4). Fennell did not receive any notice of error.

On November 7, 2016, the day before the general election, Stoecklin filed a complaint pursuant to KRS 118.176 challenging Fennell's bona fides. He argued because all signatures were affixed to Fennell's nominating papers prior to November 4, 2015, these signatures were invalid and should be stricken, disqualifying Fennell for election. He argued the Campbell County Board of Elections should, therefore, be required to strike Fennell from the rolls or refuse to count votes cast on her behalf.

The case was not heard before the general election. At the general election, Fennel received the third most votes resulting in her reelection as a city commissioner.

The circuit court found that Fennell's failure to obtain the required signatures on or after November 4, 2015, was a technical violation of a directory part of the statute that was not essential to the validity of the election, affirmed Fennell's election to the city commission and dismissed Stoecklin's complaint.

We review the circuit court's conclusions of law regarding the interpretation of elections laws *de novo. Hardin v. Montgomery*, 495 S.W.3d 686, 694 (Ky. 2016).

"Traditionally, our analysis of election law violations and their effects upon election results requires us to determine if the statutory requirement under review is directory or mandatory. Violations of directory requirements do not nullify the election results, but violations of mandatory provisions may." *Id.* at 699.

As defined in *Varney v. Justice*, 86 Ky. 596, 6 S.W. 457, 459 (1888), a statutory requirement is "directory . . . if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case[.]" Under the *Varney* doctrine, the violation of mandatory, nondiscretionary provisions of election statutes are fatal to the election results while the violation of directory provisions do not affect election results. *Hardin*, 495 S.W.3d at 699.

In *Skaggs v. Fyffe*, 266 Ky. 337, 98 S.W.2d 884 (1936), the Court explained:

Whether a statute is to be deemed directory or mandatory depends, not on form, but on the legislative intent, which is to be ascertained by interpretation from consideration of the entire act, its nature and object and the consequence of construction one way or the other. If the provision relates to some immaterial matter not reaching the substance, or not of the essence of the thing to be done, and by an omission to observe it the rights of those interested will not be prejudiced—as where compliance is a matter of convenience or the directions are given merely with a view to securing proper, orderly or prompt procedure—it is generally regarded as but directory.

. . .

If a statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, but does not declare or indicate that their performance is essential to the validity of the election, they will be regarded as directory if they do not affect the actual merits of the election. And under the recognized principle of statutory construction that laws are to be liberally construed when necessary to reach a substantially correct result, to that end

their provisions will, to every reasonable extent, be treated as directory rather than mandatory.

. . .

[T]he use of the word "shall" with reference to some requirements . . . is usually indicative that it is mandatory, but it will not be so regarded if the legislative intention appears otherwise.

*Id.* at 886.

With these precepts in mind, we consider how our courts have interpreted the statutory requirements for petitions. The Kentucky Supreme Court established it is mandatory that a nominating petition be signed by the requisite number of qualified voters, or a candidate will be disqualified from being elected. *Barnard v. Stone*, 933 S.W.2d 394, 396 (Ky. 1996); *Morris v. Jefferson Cty. Clerk*, 729 S.W.2d 444, 445-46 (Ky. 1987); *Thomas v. Lyons*, 586 S.W.2d 711, 716 (Ky. 1979). "The reasoning behind such a mandatory provision is to ensure that the voters who sign a petition are eligible to vote for that candidate." *Hoffman v. Waterman*, 141 S.W.3d 16, 18 (Ky. App. 2004).

In contrast, most other requirements of what voters must do when signing petitions have been ruled to be directory and substantial compliance is sufficient where it can be otherwise established that the petitioners were qualified to vote for the candidate. For instance, in *Skaggs*, the Court compared the statutory requirements for a local option petition to the interpretation given to nominating petitions, which at that time contained language that specified petitioners' signatures would not be counted if their residence and post office address were not designated. *Skaggs*, 98 S.W.2d at 887-88. It concluded that omission of this requirement from nominating petitions would not void an election:

if the petition discloses the petitioners to be residents of the unit of government involved and to have the right to vote in the election to be held, it will be deemed prima facie sufficient. This is particularly so if the clerk charged with the duty of accepting or passing upon the same is satisfied.

*Id.* at 888. The Court then went on to determine that while it was mandatory that the petitioners for the local option election petition be qualified as voters in the involved territory, the provisions that petitioners "shall state his post office address and the correct date upon which same was signed" were directory, and simply required to enable the identifying of the petitioners, rather than necessary for the petition to satisfy the statute. *Id.* at 889.

The relevant statutory language before us, that "[s]ignatures for nomination papers shall not be affixed on the document to be filed prior to the first Wednesday after the first Monday in November of the year preceding the year in which the office will appear on the ballot[,]" was added to the statutes by 2008 Kentucky Laws Ch. 79 (HB 479). Our determination of whether this statutory requirement is mandatory or directory is a case of first impression.

In interpreting KRS 118.315 as a whole, we note that it uses mandatory type language of "shall" when requiring petitioners to date when they sign the nominating petition and "shall not" when specifying that the petition should not be signed earlier than a certain date. While the statute provides that certain missing information, including the lack of a date "shall result in the signature not being counted[,]" it does not specify the result which will follow if the petition contains a date that indicates the petitioner signed the petition prematurely.

As discussed in *Skaggs*, similar provisions contained in the former nomination petition statute that required certain

information "shall" be provided or the signature would not be counted, despite its mandatory language was merely directory so long as the eligibility of the voters to sign the petition was established. Therefore, the requirement in the current statute that the nominating petition signatures be dated or they will not count, is also not mandatory, so long as it can be established that the petition signers are eligible voters for the relevant election. If the provision that signatures be dated or they will not count is not mandatory, it is not logical to interpret the provision that voters must not sign before a certain date (which does not specify a penalty for noncompliance) as mandatory.

The requirement that petitioners not sign a nominating petition before a certain date was intended to ensure that voters signed the petition for the next election and would still likely be residents for such an election. Where two voters signed the petition a day early, another voter signed two days early and another voter signed two weeks early, this intent was still accomplished. The fact that the petition was signed early was insignificant given that the nominating petition was signed by eligible registered voters, submitted timely, otherwise followed all statutory requirements and was not noted to have any error by the county clerk. This provision firmly fits within the *Skaggs* directory category because the date on which the petition was signed is a mere directory requirement as to timing that does not affect the merits of the election.

Accordingly, we find there was substantial compliance with the statute and affirm the Campbell Circuit Court's opinion.

ALL CONCUR.