RENDERED: AUGUST 22, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0215-DGE

NIRUPAMA KULKARNI                                                      APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2024-CA-0495
JEFFERSON CIRCUIT COURT NO. 24-CI-001903

DENNIS HORLANDER; BOBBIE                                              APPELLEES
HOLSCLAW, AS CHAIR OF THE
JEFFERSON COUNTY BOARD OF
ELECTIONS; KENTUCKY BOARD OF
ELECTIONS; AND MICHAEL ADAMS,
KENTUCKY SECRETARY OF STATE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

For a candidate's name to appear on a partisan primary ballot, KRS[1]

118.125(2) requires the timely filing of a notification and declaration[2]

containing the signatures of "not less than two (2) registered voters of the same

party from the district or jurisdiction from which the candidate seeks

---

[1] Kentucky Revised Statutes.

[2] Although KRS 118.125 specifically denominates this document as a "notification and declaration," the term "nomination papers" appears elsewhere throughout KRS Chapter 118. Because the meaning of these terms is identical, we use them interchangeably. *See* Opinion of the Attorney General (OAG) 05-008 ("The context implies that 'notification and declaration' and 'nomination papers' are interchangeable."). We further note "[a]n attorney general's opinion is highly persuasive, but not binding on the recipient." *York v. Commonwealth*, 815 S.W.2d 415, 417 (Ky. App. 1991).

nomination." Former state Representative Dennis Horlander[3] alleged incumbent Representative Nirupama Kulkarni failed to satisfy this requirement and filed a petition in Jefferson Circuit Court, pursuant to KRS 118.176, challenging her qualifications to appear on the Democratic primary ballot for the office of State Representative for the 40th House District. The trial court denied the petition and allowed Representative Kulkarni to remain on the ballot. The Court of Appeals reversed holding Representative Kulkarni was disqualified for failure to obtain the requisite number of signatures. We granted discretionary review.

Recognizing the necessity for an expeditious ruling, this Court entered an order on June 6, 2024, announcing that a majority voted to affirm the decision of the Court of Appeals. We now render this opinion to explain the reasoning pertinent to that order and limit our consideration to the issues presented in Representative Kulkarni's motion for discretionary review: (1) whether Horlander had the right to appeal the denial of his petition by the trial court; and (2) whether the 1990 Amendments to KRS 118.125 superseded our decision in *Morris v. Jefferson Cnty. Clerk*, 729 S.W.2d 444 (Ky. 1987).

**FACTS AND PROCEDURAL HISTORY**

The underlying facts are not in dispute. On December 22, 2023, Representative Kulkarni signed her notification and declaration seeking the

---

[3] As determined by the trial court, Horlander's standing to challenge Representative Kulkarni's qualifications is predicated on his status as a qualified voter. *See* KRS 118.176(2).

Democratic Party nomination for the 40th House District. The text of the notification and declaration appears on a preprinted form issued by the Kentucky State Board of Elections which consists of a single sheet containing two sections. The first section pertains to the candidate's qualifications followed by a jurat.[4] The second section concerns the voters' qualifications followed by a jurat.

Sharon D. LaRue and Catherine Morton Ward signed the nomination papers under oath as registered voters of the Democratic party. Their signatures were affixed beneath the statement, "we solemnly swear that we are registered voters and members of the same Party and are from the district or jurisdiction from which the candidate seeks nomination[.]" LaRue, however, was a registered Republican at the time she signed the document.[5]

Representative Kulkarni filed her nomination papers with the Secretary of State on January 2, 2024, three days before the filing deadline expired on January 5, 2024. On January 8, 2024, Democratic Party leadership brought the issue of LaRue's party affiliation to Representative Kulkarni's attention. LaRue changed her party affiliation to Democrat on the same day and her registration was officially processed on January 10, 2024. On January 17,

---

[4] "[A] jurat is a simple statement that an instrument is subscribed and sworn to or affirmed before a proper officer without the further statement that it is the act or deed of the person making it." *Matthews v. Commonwealth*, 163 S.W.3d 11, 25 (Ky. 2005) (quoting 1A C.J.S. *Acknowledgements* § 2 (June 2004)).

[5] As to whether this mishap occurred through ignorance, accident, mistake or otherwise, we cannot speculate. The present record provides no insight into LaRue's state of mind at the time she signed the nomination papers and we express no opinion in connection therewith.

2024, the Kentucky Secretary of State certified Representative Kulkarni's name for inclusion on the ballot.

On March 18, 2024, Horlander filed a petition seeking to disqualify Representative Kulkarni because she did not comply with the requirement that two registered voters of the Democratic Party sign her nomination papers. The trial court declined to disqualify Representative Kulkarni in an opinion and order entered on April 25, 2024. In reaching its conclusion, the trial court applied a standard of substantial compliance after interpreting the 1990 amendments to KRS 118.125 to have effectively superseded the decision of this Court in *Morris*.

On direct appeal, the Court of Appeals reversed and remanded with instructions for the trial court to disqualify Representative Kulkarni. The Court of Appeals rejected Representative Kulkarni's argument that it lacked jurisdiction to consider Horlander's appeal and further determined *Morris* was still good law. Thus, it concluded the trial court erred by applying a standard of substantial compliance.

This Court granted discretionary review and allowed the Democratic primary election to occur as scheduled on May 21, 2024. We further enjoined the Jefferson County Board of Elections, the Kentucky Board of Elections, and the Kentucky Secretary of State from certifying the results of the election pending further orders of this Court. Representative Kulkarni overwhelmingly won the primary election garnering seventy-eight percent of the vote.

4

**LAW AND ANALYSIS**

## I. COURT OF APPEALS PROPERLY EXERCISED JURISDICTION

As a threshold jurisdictional matter, Representative Kulkarni argues Horlander had no right to appeal the trial court's determination that she was a bona fide candidate.[6] We disagree.

Citing *Gibson v. Thompson*, 336 S.W.3d 81 (Ky. 2011), Representative Kulkarni contends KRS 118.176(4) limits the right to appeal to situations where the trial court disqualifies a candidate. We do not read the statute or *Gibson* so narrowly.

KRS 118.176(4) provides:

> If the court finds the candidate is not a bona fide candidate it shall so order, and certify the fact to the board of elections, and the candidate's name shall be stricken from the written designation of election officers filed with the board of elections or the court may refuse recognition or relief in a mandatory or injunctive way. The order of the Circuit Court shall be entered on the order book of the court and shall be subject to a motion to set aside in the Court of Appeals. The motion shall be heard by the Court of Appeals or a judge thereof in the manner provided for dissolving or granting injunctions, except that the motion shall be made before the court or judge within five (5) days after the entry of the order in the Circuit Court, and may be heard and tried upon the original papers, and the order of the Court of Appeals or judge thereof shall be final.

*Gibson* merely held that an unsuccessful challenger to a candidate's bona fides cannot obtain expedited appellate review via the special motion procedure outlined in KRS 118.176(4). *Id.* at 83. Moreover, we explicitly

---

[6] "A 'bona fide' candidate means one who is seeking nomination in a primary or election in a special or regular election according to law." KRS 118.176(1).

5

recognized an order dismissing a bona fides challenge for lack of standing "is a final and appealable order." *Id.* We view the reasoning of *Gibson* to apply equally to situations where, as here, the trial court denies a challenge on the merits.

In the present matter, Hollander timely filed a notice of appeal from the trial court's order denying his petition. We deem this procedure to have adequately invoked the Court of Appeals' jurisdiction.

## II. REPRESENTATIVE KULKARNI IS DISQUALIFIED FOR FAILURE TO COMPLY WITH KRS 118.125(2)

### A. STANDARD OF REVIEW

At the outset, it must be recognized that the present appeal concerns a pre-election challenge to a candidate's qualifications to appear on the ballot as opposed to an election contest which "obviously is a post-election procedure, involving an election that has been held[.]" *Stephenson v. Woodward*, 182 S.W.3d 162, 168 (Ky. 2005) (quoting *Fletcher v. Wilson*, 495 S.W.2d 787, 791 (Ky. 1973)). Thus, "[c]ases dealing with election contests—that is, disputes involving not the qualifications of a candidate but the validity of the election itself—are inapplicable to this matter." *Id.* (citing *Taylor v. Beckham*, 108 Ky. 278, 56 S.W. 177 (1900)).

We further emphasize that Kentucky law has long empowered the legislature "to impose such reasonable conditions and tests as to party membership or affiliation, as shall entitle those seeking party nominations to get their names upon their party ballots as candidates." *Hager v. Robinson,*

6

154 Ky. 489, 157 S.W. 1138, 1142 (1913). The constitutional validity of the requirements contained in KRS 118.125 have not been questioned here. This appeal presents an issue of statutory interpretation, which is purely a matter of law subject to de novo review. *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011). Thus, "the [legal] conclusions reached by the lower courts are entitled to no deference." *Id.*

When this Court is called upon to interpret the meaning of a statute, our foremost duty "is to determine and effectuate legislative intent[.]" *Kindred Healthcare v. Harper*, 642 S.W.3d 672, 680 (Ky. 2022) (quoting *Sweasy v. Wal-Mart Stores, Inc.*, 295 S.W.3d 835, 838 (Ky. 2009)). Indeed, "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1). We must ascertain "that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Kindred*, 642 S.W.3d at 680 (quoting *Wilson v. Commonwealth*, 628 S.W.3d 132, 140 (Ky. 2021)). However, "the principle that the statute is to be liberally construed does not mean that its provisions can be ignored." *Middletown Engineering Co. v. Main Street Realty, Inc.*, 839 S.W.2d 274, 277 (Ky. 1992).

As a general matter of interpretation, courts demand strict compliance with mandatory statutory provisions while directory provisions are subject to substantial compliance. *Knox Cnty. v. Hammons*, 129 S.W.3d 839, 843 (Ky. 2004). To determine "whether [a] provision is mandatory or directory, we

7

depend 'not on form, but on the legislative intent, which is to be ascertained by interpretation from consideration of the entire act, its nature and object, and the consequence of construction one way or the other.'" *Id.* (quoting *Skaggs v. Fyffe*, 266 Ky. 337, 98 S.W.2d 884, 886 (1936)). "In other words, 'if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the statute is to be regarded as directory merely.'" *Id.*

We recognize the longstanding principle that uncertainty or doubt in statutory language "should be resolved in favor of allowing the candidacy to continue." *Heleringer v. Brown*, 104 S.W.3d 397, 403 (Ky. 2003). However, where ballot access provisions are unambiguous and clear, this Court has consistently "require[d] strict compliance with election statutes." *Barnard v. Stone*, 933 S.W.2d 394, 395 (Ky. 1996); *Morris*, 729 S.W.2d at 444; *Thomas v. Lyons*, 586 S.W.2d 711, 716 (Ky. 1979). Moreover, we will not apply the doctrine of substantial compliance to excuse noncompliance with the governing statutory requirements. *Fletcher v. Wilson*, 500 S.W.2d 601, 606 (Ky. 1973).

## B. THE CURRENT PROVISIONS KRS 118.125(2) ARE UNAMBIGUOUS AND MANDATORY

Representative Kulkarni's primary argument centers on the effect of the 1990 Amendments to KRS 118.125 following our decision in *Morris*. Before addressing the import of these amendments, however, our review must commence with the present version of the statute because "[t]he starting point in discerning [legislative] intent is the existing statutory text and not the

8

predecessor statutes." *Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004) (internal citation omitted).

As currently enacted, KRS 118.125 sets forth the procedure and form which a candidate must complete to have his or her name appear on a primary ballot:

> (1) Except as provided in KRS 118.155, any person who is qualified under the provisions of KRS 116.055 to vote in any primary for the candidates for nomination by the party at whose hands he or she seeks the nomination, shall have his or her name printed on the official ballot of his or her party for an office to which he or she is eligible in that primary, upon filing, with the Secretary of State or county clerk, as appropriate, at the proper time, a notification and declaration.
>
> (2) The notification and declaration shall be in the form prescribed by the State Board of Elections. It shall be signed by the candidate and by not less than two (2) registered voters of the same party from the district or jurisdiction from which the candidate seeks nomination. Signatures for nomination papers shall not be affixed on the document to be filed prior to the first Wednesday after the first Monday in November of the year preceding the year in which the office will appear on the ballot. The notification and declaration for a candidate shall include the following oath:
>
>> "For the purpose of having my name placed on the official primary election ballot as a candidate for nomination by the ——— Party, I, ——— (name in full as desired on the ballot as provided in KRS 118.129), do solemnly swear that my residence address is ——— (street, route, highway, city if applicable, county, state, and zip code), that my mailing address, if different, is – ——— (post office address), and that I am a registered ——— ——— (party) voter; that I believe in the principles of the ——— Party, and intend to support its principles and policies; that I meet all the statutory and constitutional qualifications for the office which I am seeking; that if nominated as a candidate of such party at the ensuing election I will accept the nomination and not withdraw for reasons other than those stated in KRS 118.105(3); that I will not knowingly violate any election law or any law relating to corrupt and

9

> fraudulent practice in campaigns or elections in this state, and if finally elected I will qualify for the office."
>
> The declaration shall be subscribed and sworn to before an officer authorized to administer an oath by the candidate and by the two (2) voters making the declaration and signing the candidate's petition for office.
>
> (3) When the notice and declaration has been filed with the Secretary of State or county clerk, as appropriate, and certified according to KRS 118.165, the Secretary of State or county clerk, as appropriate, shall have the candidate's name printed on the ballot according to the provisions of this chapter, except as provided in KRS 118.185.
>
> (4) Titles, ranks, or spurious phrases shall not be accepted on the filing papers and shall not be printed on the ballots as part of the candidate's name; however, nicknames, initials, and contractions of given names may be acceptable as the candidate's name.

The provisions of KRS 118.125(2) are plain and unambiguous. The requirement is clear: a notification and declaration "shall be signed by the candidate and by not less than two (2) registered voters of the same party from the district or jurisdiction from which the candidate seeks nomination." This Court has generally interpreted the word "shall" to connote a mandatory sense unless the context of a statute requires otherwise. KRS 446.010(39); *Cabinet for Health & Fam. Servs. ex rel. Child Support Enforcement v. B.N.T.*, 651 S.W.3d 745, 750 (Ky. 2022). We have previously explained that "[i]n common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command and . . . must be given a compulsory meaning." *Bevin v. Commonwealth ex rel. Beshear*, 563 S.W.3d 74, 89 (Ky. 2018) (quoting *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795-96 (Ky. 2003)). In short, "[s]hall means shall." *Id.*

10

Moreover, the phrase "[i]t shall be signed by . . . voters of the same party" necessarily contemplates that the two registered voters must *be* members of the same party as the candidate *at the time* they sign the notification and declaration; not that they will become members of the same party at some indeterminate point in the future. In interpretating an analogous signature requirement contained in KRS 118.315(2), this Court construed the language "[i]t shall be signed . . . by registered voters from the district or jurisdiction from which the candidate seeks nomination" to be "sufficiently explicit and unambiguous to require its literal application." *Barnard*, 933 S.W.2d at 395. We perceive the reasoning of *Barnard* to be sound and equally applicable to the present appeal.

Our interpretation that a voter must be qualified at the time of signing a notification and declaration under KRS 118.125(2) finds additional support in the requirement that "[t]he declaration shall be subscribed and sworn to before an officer authorized to administer an oath by the candidate and by the two (2) voters making the declaration and signing the candidate's petition for office." When an election statute contains an oath requirement, "[t]he purpose . . . is to bind the conscience and secure the truth of the statement under the influence of the sanctity of a religious obligation or calling upon God to witness what is avowed to be the truth."[7] *Asher v. Sizemore*, 261 S.W.2d 665, 666 (Ky. 1953).

---

[7] We observe the law does not require an oath or affirmation to take any particular form so long as the "witness shall first undertake a solemn obligation to tell the truth." *Gaines v. Commonwealth*, 728 S.W.2d 525, 526 (Ky. 1987); see also KRS 454.170.

11

Such a sworn statement pertains to objective facts whose verity or falsehood must perforce be determined in reference to the circumstances existing at the time the statement was made. Indeed, Kentucky law embodies "the policy of discouraging all . . . falsehoods made under oath, even where there has been no substantial impairment of the administration of justice." *Commonwealth v. Stallard*, 958 S.W.2d 21, 25 (Ky. 1997) (quoting Official Commentary to KRS 523.040)).

Further, this Court cannot disregard the failure to comply with the signature requirement as a technical irregularity or mere error in form. A primary purpose of ballot access statutes is to preserve the integrity of the nomination process. *See Barnard*, 933 S.W.2d at 395. Mandatory signature requirements "ensure that the voters who sign a petition are eligible to vote for that candidate."[8] *Stoecklin v. Fennell*, 526 S.W.3d 104, 107 (Ky. App. 2017) (quoting *Hoffman v. Waterman*, 141 S.W.3d 16, 18 (Ky. App. 2004)). Moreover, legislative "tests of party loyalty and party membership appl[y] with equal force to electors voting in and candidates voted for in primary elections; and, whether applied by legislative enactment to the one class or the other, they are

---

[8] Representative Kulkarni also argues a signing voter need not necessarily be eligible to vote for the candidate in the primary election for which the candidate is proposed so long as the voter is a member of the same of the party as the candidate and otherwise satisfies the residency requirement. Curiously, under KRS 116.055, the last day to change party affiliation to vote in the 2024 primary was December 31, 2023, yet the filing deadline for the candidate's nomination papers was January 5, 2024. Thus, it is arguable whether the requirements of KRS 118.125(2) could be satisfied where a voter changed his or her party affiliation after the deadline for switching parties to vote in the upcoming primary but before the candidate's filing deadline. But those are not the facts of this case, and we leave this question for another day.

12

equally reasonable." *Hager,* 157 S.W. at 1146. Our predecessor Court observed the purpose of Kentucky's original primary election law was "to purify the politics of the state, by preventing frauds and wrongdoing in making nominations[.]" *Id.* We believe this reasoning continues to illuminate the substantive public purpose underlying KRS Chapter 118 as a whole and forecloses the application of substantial compliance to KRS 118.125(2) in particular.

Thus, we hold there is no defense of substantial compliance for the failure to strictly adhere to the clear and firm legislatively-enacted filing requirements entitling Kentucky candidates to ballot access. Continued strict judicial enforcement of such legislative enactments serves as an indispensable foundation for continued election integrity, partisan accountability, and public trust. Absent judicial imposition of a strict compliance standard, the intended meaning and protective impact of the legislature's statutory language would be diluted, becoming meaningless and ineffectual. Transforming such well-defined statutory requirements into mere suggestions by judicial fiat would blur election transparency, invite irregular enforcement, and damage public trust.

**C. 1990 AMENDMENTS TO KRS 118.125 DID NOT SUPERSEDE *MORRIS***

Representative Kulkarni seeks to avoid a strict interpretation of the signature requirements contained in KRS 118.125 by arguing that the 1990 amendments effectively superseded *Morris.* Specifically, she contends these

13

amendments compel the conclusion that the signature requirement is now a directory provision subject to substantial compliance. We disagree.

As acknowledged by the parties and lower courts, our decision in *Morris* involved strikingly similar facts. In *Morris*, the candidate sought the Democratic Party nomination for the office of Commonwealth's Attorney. 729 S.W.2d at 444. At the time the candidate's nomination papers were filed, one of the two required voters was not a registered member of the Democratic Party. *Id.* at 445. After the filing deadline had passed, the voter properly registered. *Id.*

A challenge to the candidate's qualifications followed. *Id.* The trial court denied the challenge and ruled the candidate had substantially complied with the statutory requirements. *Id.* The Court of Appeals "reversed the trial court and ordered [the candidate's] name stricken from the ballot." *Id.* On discretionary review, this Court affirmed the Court of Appeals. *Id.*

We rejected the argument that a candidate's qualifications are determined as of the date of the primary election as opposed to the filing deadline and explained:

> The affidavit required by K.R.S. 118.125(3) must be signed by two electors who *are* (not who may thereafter become) members of the party to which the candidate belongs. We interpret this to mean that at the time the affidavit is signed and the nomination papers filed, the affiant must be a voter registered to vote as a member of the party to which the candidate belongs. In effect, [the candidate] filed his nomination papers and attached thereto only one valid affidavit of an elector who was a member of the party to which he belonged. He did not comply with the statute.

14

*Id.* at 445-46. This Court further refused to excuse non-compliance with the statutory requirements under the guise of substantial compliance:

> It is true that a candidate would be hard pressed to determine the truth of some of the allegations in the required affidavit, but the question of whether [the signing voter] was a registered voter could easily have been checked in the office of the county court clerk when the nomination papers were filed. The law places the duty upon the candidate to support his nomination papers with the affidavits of two electors. On a matter which can be so easily determined as whether or not an individual is registered to vote, there is no excuse for the candidate to claim that the affiant claimed to be registered to vote.
>
> The statute, with regard to the supporting affidavits of electors, is plain. It requires two affiants, and it is easy to comply with. An affidavit of only one elector is not a substantial compliance with the statute.

*Id.* at 446.

Representative Kulkarni emphasizes the result in *Morris* hinged on this Court's interpretation of the phrase "at the time of filing" and the present tense of the word "are" in the sentence "[a]t the time of filing his notification and declaration, the candidate shall file therewith an affidavit of two (2) reputable electors who are members of the party to which the candidate belongs[,]" which was contained in the 1987 version of KRS 118.125(3). She further asserts the removal of this specific language by the 1990 Amendments manifestly reflects the legislature's intent to remove the timing component and that the requirements of KRS 118.125 otherwise be interpreted as directory, rather than mandatory. Representative Kulkarni maintains any contrary interpretation would render the 1990 Amendments meaningless in violation of the well-established rule that "[w]here a clause in an old enactment is omitted from the

15

new one, it is to be inferred that the Legislature intended that the omitted clause should no longer be the law." *Inland Steel Co. v. Hall*, 245 S.W.2d 437, 438 (Ky. 1952).

We are unconvinced the legislature intended to supersede *Morris* through the 1990 Amendments to KRS 118.125. To be sure, the amendments must be accounted for and given effect. However, Representative Kulkarni's reading is untenable because it requires this Court to focus on certain words and phrases in isolation without consideration of the legislative changes in the context of the amended statute as a whole. *See Kindred Healthcare*, 642 S.W.3d at 680 (applying rule that the entire statute must be interpreted "in context without distorting its intended meaning by focusing on a single sentence, clause, or phrase.").

At the time *Morris* was decided in 1987, KRS 118.125 contained two separate filing requirements. The first requirement pertained only to the notification and declaration of the candidate under KRS 118.125(2) and specifically prescribed the necessary form. The second requirement related to the affidavit of electors under KRS 118.125(3) which provided in pertinent part, "[a]t the time of filing his notification and declaration, the candidate shall file therewith an affidavit of two (2) reputable electors who are members of the party to which the candidate belongs." Under KRS 118.125(4), the notification and declaration and the accompanying affidavits were permitted to "be on the same or separate sheets, but shall be filed together."

16

In 1990, three years after the *Morris* decision, the General Assembly continued a comprehensive overhaul of Kentucky's election laws.[9] 1990 Ky. Acts. ch. 48 (S.B. 47). By this Act, the legislature created KRS 116.037 and KRS 118.775; repealed KRS 116.049, KRS 116.075, and KRS 119.135; and amended numerous other existing statutes.

Pertinent to KRS 118.125, the legislature reenacted Subsection (1) without change. 1990 *Ky. Acts.* ch. 48 at § 39. Additionally, the separate affidavit requirement under Subsection (3) was eliminated and merged into the amended Subsection (2), which created a single notification and declaration form:

> The notification and declaration shall be in **the form prescribed by the State Board of Elections. It shall be signed by the candidate and by not less than two (2) registered voters of the same party from the district or jurisdiction from which the candidate seeks nomination. The notification and declaration shall include the** following **oath** [~~form~~]:
>
> . . .
>
> The declaration shall be subscribed and sworn to by the person making it [;] before an officer authorized to administer an oath.

---

[9] We note the prior legislative session of 1988 also resulted in wide-ranging changes to Kentucky's election laws. 1988 Ky. Acts ch. 341 (S.B. 268). Indeed, the year 1987 was a time of "election reform fervor[.]" John W. Hays, *PACS in Kentucky: Regulating the Permanent Committees*, 76 Ky. L.J. 1011, 1012 (1988). The reform-minded sentiment of the day was largely attributed to public outcry following "[a]n eight-day series of articles relative to election fraud [that] appeared in the Louisville *Courier-Journal* in October of 1987." Legis. Rsch. Comm'n., *Foreword to Final Rep. of the Special Comm'n. on Election Reform*, Rsch. Rpt. No. 240 (Ky. Dec. 1988). "The articles documented abuses in the areas of vote buying and selling; campaign contributors who subsequently received state jobs; appointments or contracts; the increasing influence of political action committees; illegal cash contributions; the enforcement role of the Registry of Election Finance; and the rapidly increasing cost of campaigns." *Id.*

17

*Id.* Subsection (4) was also amended to remove the phrase "[t]he nomination and declaration and the accompanying affidavits may be on the same or separate sheets, but shall be filed together," and was otherwise reenacted as the new Subsection (3) to provide:

> **When the nomination and declaration has been** [so] filed with the proper officer, and certified according to KRS 118.165, the officer shall have the candidate's name printed on the ballot according to the provisions of this chapter, except as provided in KRS 118.185.

*Id.*

In context, it is evident that the 1990 Amendments to KRS 118.125 involved more than the mere reenactment of the former affidavit requirements without the phrase "at the time of filing" and the single word "are." Instead, the notification and declaration and the affidavit requirements were merged into a unified form whose timing was governed by Subsection (1) which conditioned a candidate's entitlement to ballot access "upon filing, with the proper officer at the proper time, a notification and declaration." 1990 *Ky. Acts.* ch. 48 at § 39. The combination of these separate requirements obviated the need to specify the time for filing the voters' signatures in relation to the candidate's filing because both requirements are satisfied simultaneously by the placement of each of the signatures onto a single form. Based on a plain language reading, we construe the 1990 amendments to KRS 118.125 to reflect

18

the legislature's intent to retain the essential, substantive requirements of the prior law while simplifying the administrative procedure.[10]

Moreover, we perceive the semantic changes in the amended statute to have resulted from the dictates of logic and grammar as opposed to the conversion of a mandatory requirement into a directory provision. In this light, the retention of the phrase "at the time of filing" and the word "are" in the amended version of KRS 118.125(2) would have amounted to mere surplusage. Thus, we conclude the 1990 amendments are consistent with the reasoning of our decision in *Morris*.

## D.  MATERIAL DEFECTS CANNOT BE CORRECTED OR AMENDED AFTER THE FILING DEADLINE

Representative Kulkarni further contends disqualification is improper because LaRue changed her party affiliation prior to the certification of Representative Kulkarni's name to the ballot by the Secretary of State. We disagree and hold material defects in a candidate's nomination papers cannot be corrected or amended after the filing deadline.

Entitlement to ballot access depends "*upon filing*, with the Secretary of State or county clerk, as appropriate, *at the proper time*, a notification and declaration." KRS 118.125(1) (emphasis added). As relevant here, the proper

---

[10] While the parties dispute the extent to which a post-enactment statement made by a co-sponsor of the 1990 Amendments sheds light on the proper interpretation of KRS 118.125, we need not consider this issue because our holding is based on a plain language reading of the statute. *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) ("Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history [and] the canons of construction[.]").

time for filing refers to KRS 118.165(2) which sets forth the deadline for the filing of nomination papers:

> Candidates for offices to be voted for by the electors of more than one (1) county, and for members of Congress and members of the General Assembly, *shall file their nomination papers* with the Secretary of State not earlier than the first Wednesday after the first Monday in November of the year preceding the year the office will appear on the ballot and *not later* than the first Friday following the first Monday in January preceding the day fixed by law for holding the primary. Signatures for nomination papers shall not be affixed on the document to be filed prior to the first Wednesday after the first Monday in November of the year preceding the year in which the office will appear on the ballot. *All nomination papers shall be filed no later* than 4 p.m. local time at the place of filing when filed on the last date on which the papers may be filed.

(Emphases added).

Kentucky law has long regarded the deadline for the filing of nomination papers as mandatory. *Hallon v. Center*, 102 Ky. 119, 43 S.W. 174, 175-76 (1897), overruled on other grounds by *Fannin v. Cassell*, 487 S.W.2d 919 (Ky. 1972). In view of the legislature's repeated use of the word "shall" in connection with the time of filing, we perceive no basis to interpret the current version of KRS 118.165(2) otherwise.

Concomitant with the mandatory filing deadline, the traditional rule is that material defects in nomination papers cannot be corrected or amended after the deadline has expired. *Fletcher*, 500 S.W.2d at 606-07 (rejecting argument "that 'supplemental' nomination papers filed . . . in correct form, six days after the deadline for filing, may be accepted as curing the defects in his original papers."); *Bd. of Ed. v. Fiscal Court*, 485 S.W.2d 752, 753 (Ky. 1972)

20

("The insufficient petitions could not be made sufficient by such late action (not only after the time for filing had expired but after the matter had been appealed to the circuit court)."); *Evans v. Hill*, 314 Ky. 61, 234 S.W.2d 297, 298 (1950) (rejecting candidate's attempt to correct nomination papers where fatal error discovered after filing deadline); OAG 85-67 ("[O]nce the deadline for filing has lapsed, under KRS 118.365, the filing papers of the candidate cannot be changed or corrected."); 26 Am. Jur. 2d *Elections* § 217 (2024) ("Where the defect in a [nomination] petition is fatal, and the time for filing has expired, amendment of the petition is properly refused."); 29 C.J.S. *Elections* § 243 ("A nomination petition which is invalid cannot be amended after the time for filing it has passed as by correcting a defective acknowledgment, supplying an omission from the jurat of a designating petition, adding names to the petition, or correcting the name of the district for which the nomination was made.").

A material defect results from the failure to comply with a mandatory requirement in contrast to a mere technical defect arising from the failure to observe a directory requirement. *Skaggs*, at 98 S.W.2d 886 ("A proceeding not following a mandatory provision of a statute is rendered illegal and void, while an omission to observe or failure to conform to a directory provision is not."). Mere technical defects may generally be cured by amendment, "but material errors or omissions cannot be corrected, particularly after the time for filing has expired." 29 C.J.S. *Elections* § 243. We discern nothing in the applicable statutes to justify a departure from the well-established law on this subject.

Compliance with the signature requirement under KRS 118.125(2) is mandatory and, therefore, material. It is undisputed that Representative Kulkarni's nominating papers were insufficient at the expiration of the filing deadline. Consequently, we cannot deem her subsequent efforts to have cured this material defect.

## CONCLUSION

Kentucky law places the burden on the candidate to ensure the statutory requirements to gain access to the ballot have been satisfied. *Morris*, 729 S.W.2d at 446. It is not unreasonable or unduly harsh to demand strict compliance with clearly enacted legislative mandates for ballot access. Assuring one's required election filings are compliant is among the first duties of anyone intent upon seeking public office. Where, as here, one's own political party was capable of expeditiously ascertaining the inaccuracy of a voter's claimed affiliation by reference to readily available public records after the passing of a filing deadline, a vigilant office-seeker could have similarly confirmed the veracity of a voter's representation prior to filing, thereby avoiding any challenge or disqualification.

In discharging our fundamental duty to declare what the law is, we remain mindful of the impact on the rights of the voters and reiterate the sentiments aptly expressed by the *Stephenson* majority:

> This Court is deeply respectful of the electoral process and its very fundamental role in the functioning of a true democracy. We are equally sympathetic to those citizens who voted in the election herein disputed. However, we cannot ignore that an election may only be considered legitimate when the statutory procedures

22

governing the process are followed and constitutional mandates are respected.

182 S.W.3d at 173. "[T]he legislature has delegated authority to the judiciary to determine the qualifications of a candidate for public office; that alone is the issue to which we have confined our decision." *Id.* at 174.

Because LaRue was not a member of the same party as the candidate at the time she signed the nomination papers, Representative Kulkarni did not comply with the signature requirement under KRS 118.125(2), and we must conclude the failure to do so is fatal to her candidacy. Thus, we need not address Horlander's alternative arguments for disqualification. Consequently, "the effect of the disqualification of a candidate subsequent to the election is that no election has occurred and the true and legitimate will of the people has not yet been expressed." *Stephenson*, 182 S.W.3d at 173. Furthermore, when a nomination is invalidated and it is impractical to strike the candidate's name from the ballot, the provisions of KRS 118.212 shall be observed. *Barnard*, 933 S.W.2d at 396.

For the foregoing reasons, the decision of the Court of Appeals is hereby affirmed.

All sitting. VanMeter, C.J.; Conley, Keller, Lambert and Nickell, JJ., concur. Thompson, J., concurs in part and dissents in part by separate opinion in which Bisig, J., joins. Bisig, J., dissents by separate opinion in which Thompson, J., joins.

THOMPSON, J., CONCURRING IN PART, DISSENTING IN PART: I concur with the majority opinion that the Court of Appeals could properly

23

exercise its jurisdiction to decide whether Representative Kulkarni was a bona fide candidate. However, I disagree with its ultimate resolution of that issue.

Whether the disqualification of one of Representative Kulkarni's signatories renders her unqualified to stand for election is a very close issue. I have great respect for the majority opinion's reasoning that she is unqualified. The majority opinion dutifully interprets Kentucky Revised Statutes (KRS) 118.125(2) in accordance with our established precedent, determining that the 1990 amendments did not make any substantive change to these requirements. This is our law. However, I have been persuaded by Justice Bisig that the 1990 amendments present sufficient ambiguity that they should be interpreted as intending to change to this law. I write separately to criticize the hypertechnical requirements of KRS 118.125(2) which is a trap for unwary candidates who file for office, and to suggest ways to ameliorate this trap so that the will of the voters will be respected.

I doubt most candidates give much thought to who will sign the required form for them to become candidates for office, much less feel the need to proactively check the party registration status of the persons signing. As our past precedent shows, this is a mistake, and races can be lost when it comes to overlooking strict compliance with the technical requirements of this statute. In filling out this form, only two signature lines are included. I suggest that, since only two appropriate signatures are required but additional signatures can properly be included, the Secretary of State revise the required form which

24

is issued by the Kentucky State Board of Elections to provide for additional signature lines.

I also urge our General Assembly to amend the law to specifically relax such requirements. Over five decades I have observed numerous election controversies because of this law. In the meantime, the General Assembly has liberalized many other provisions of election statutes. I believe it is past time for it to clearly do the same with these requirements.

Bisig, J., joins.

BISIG, J., DISSENTING: I respectfully dissent from the majority's well written decision affirming the Kentucky Court of Appeals and disqualifying Representative Nirupama Kulkarni from the Democratic primary ballot for the office of State Representative for the 40th House District. I would instead affirm the trial court and allow Representative Kulkarni to remain on the ballot. In its opinion, the majority puts forth a well-reasoned argument for disqualifying Representative Kulkarni for failure to comply with KRS 118.125(2). The majority opinion gives a plausible interpretation of the effect of the 1990 Amendment removing the time component from KRS 118.125 following this Court's decision in *Morris v. Jefferson County Clerk*, 729 S.W.2d 444 (Ky. 1987). The majority finds the change was intended to avoid redundancies and streamline the substantive election requirements. In fact, another explanation for the 1990 Amendment is suggested by the timing of the amendment itself, which removed the phrase "at the time of filing" from the

25

statute after the *Morris* decision which relied on that very language. It is also plausible the amendment was to ameliorate the harsh outcome of *Morris.*

Given the two possible interpretations of the amendment to the filing requirements statute, I would recognize the long-standing principle that uncertainty or doubt in statutory language "should be resolved in favor of allowing the candidacy to continue." *Heleringer v. Brown*, 104 S.W.3d 397, 403 (Ky. 2003). The idea of liberal construction of election statutes that favors the goal of broad voter participation is deeply embedded in Kentucky law. *Id.* The *Heleringer* Court notes language from *Napier v. Roberts*, 172 Ky. 227, 189 S.W. 206, 209 (1916) finding a rule of public importance that the individual voter should not be deprived of the opportunity of choosing a public servant from among those who seek the position, unless the plain or manifest purpose of the law demands it. As far back as *Baker v. Marcum*, 216 Ky. 210, 287 S.W. 696, 697 (1926), courts have called for the interpretation of election laws to register public will and "be along sound and reasonable lines, and not so ultra technical as either to defeat the will of the public or place an unnecessary burden upon the electors."

Representative Kulkarni filed her papers on January 2, 2024, three days before the expiration of the filing deadline. By January 8, 2024, the signing voter filed to switch her registration. On January 17, 2024, the Secretary of State certified Representative Kulkarni's name for the ballot. Accordingly, by the time she was placed on the ballot, Representative Kulkarni had the *bona*

26

*fides* to serve as a representative and two registered Democrats supported her candidacy. For these reasons, I would affirm the trial court.

Thompson, J., joins.

COUNSEL FOR APPELLANT:

James Craig
Tyler Larson
Craig Henry PLC


COUNSEL FOR APPELLEE:

Steven J. Megerle
 Megerle Law


COUNSEL FOR SECRETARY OF STATE

Jennifer Schwartz Scutchfield


COUNSEL FOR JEFFERSON COUNTY BOARD OF ELECTIONS

Natalie Suzanne Johnson
Kathryn Delaine Meador

COUNSEL FOR KENTUCKY BOARD OF ELECTIONS

Taylor Austin Brown


COUNSEL FOR AMICUS CURIAE ROBERT STIVERS, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE KENTUCKY SENATE AND DAVID W.
OSBORNE, IN HIS OFFICIAL CAPACITY AS SPEAKER
OF THE KENTUCKY HOUSE OF REPRESENTATIVES :

D. Eric Lycan
Joseph A. Bilby
Office of the Speaker

David E. Fleenor
Office of the Senate President